1  Arnold Levinson
2  California Bar No. 66583
   PILLSBURY & LEVINSON, LLP
3  600 Montgomery St., 31st Flr.
   San Francisco, CA 9411
4  (415) 433-8000 (Telephone)
5  (415) 433-4816 (Facsimile)
   alevinson@pillsburylevinson.com
6
7  Steven P. Krafchick
   Washington State Bar No. 13542
8  Pro Hac Vice Application pending
   KRAFCHICK LAW FIRM
9  2701 1st Ave., Suite 340
   Seattle, WA 98121
10 (206) 374-7370 (Telephone)
11 (206) 374-7377 (Facsimile)
   klf@krafchick.com
12
13 Attorneys for Plaintiff
   ANITA B. CARR
14
15            UNITED STATES DISTRICT COURT

16           NORTHERN DISTRICT OF CALIFORNIA

17                 AT SAN FRANCISCO

18
19 ANITA B. CARR,                        NO.
20                Plaintiff.
21       v.
22 LIBERTY LIFE ASSURANCE               COMPLAINT (ERISA)
   COMPANY, a Massachusetts
23 Corporation, and PROVIDIAN
   BANCORP SERVICES, a domestic
24 corporation,
25
26                Defendants.
27
28
   COMPLAINT - 1

**KRAFCHICK LAW FIRM**
2701 First Avenue, Suite 340
Seattle, Washington 98121
(206) 374-7370  Fax (206) 374-7377

The Plaintiff, by her attorneys of the Krafchick Law Firm, alleges as follows:

## I.  PARTIES, JURISDICTION AND VENUE

1.   Plaintiff Anita B. Carr (Plaintiff Carr) was a resident of Alameda County, State of California, at all times relevant to this cause of action.

2.   Defendant Liberty Life Assurance Company of Boston (Defendant Liberty) is a Massachusetts Corporation doing business in the State of California.

3.   Defendant Providian Bancorp Services (Defendant Providian) is the ERISA Plan Administrator, based in San Francisco, State of California.

4.   The matter in controversy exceeds Seventy Five Thousand Dollars ($75,000.00).

5.   Acts complained of and/or contracts made and/or performed as described below occurred within the Northern District of the State of California as well as in other jurisdictions.

6.   This claim is governed by ERISA 29 U.S.C. § 1001 *et seq.*

## II.  FACTUAL ALLEGATIONS

1.   Plaintiff Carr was employed by Defendant Providian from October of 1998 to November 28, 2001 (See Exhibit 1, complete copy of Defendant Liberty's claim file, at CF000091, CF000462, hereafter CF).

COMPLAINT - 2

KRAFCHICK LAW FIRM
2701 First Avenue, Suite 340
Seattle, Washington 98121
(206) 374-7370   Fax (206) 374-7377

2.    Before Plaintiff Carr became disabled, she was a director of data services for Providian Financial Corporation, and earned approximately $135,000 per year (CF000120) plus year-end bonuses.

3.    Plaintiff Carr became ill and disabled while she worked for Defendant Providian, with a date of disability of August 29, 2001 (CF000462).

4.    Plaintiff Carr's treating physicians diagnosed her with fibromyalgia and Sjögren's Syndrome.  As of August 28, 2001, these illnesses and their chronic symptoms rendered her unable to perform with reasonable continuity all the material and substantial duties of her own or any other occupation for which she is able to be reasonably fitted by training, education, experience, age, physical, and mental capacity.

5.    When Plaintiff Carr became ill and disabled, she was covered under a disability insurance policy (LTD policy) issued by Defendant Providian (CF000462), and premiums were paid to Defendant Liberty in consideration for disability insurance coverage, which is defined by Defendant Liberty as follows (CF000021):

> "Disability" or "Disabled" with respect to Long Term Disability Coverage means:
>
> a.  i. If the Covered Person is eligible for the 24 Month Own Occupation Benefit, "Disability" or "Disabled" means during the elimination Period and the next 24 months of Disability the Covered Person is unable to perform all of

COMPLAINT - 3

1

2

3  the material and substantial duties of his occupation on an
Active Employment basis because of an Injury or Sickness;

4  and

5  ii. After 24 months of benefits have been paid, the Covered

6  Person is unable to perform, with reasonable continuity, all
of the material and substantial duties of his own or any

7  other occupation for which he is or becomes reasonably
fitted by training, education, experience, age and physical

8  and mental capacity.

9

10  An employee must first satisfy an elimination period before
benefits are paid. The policy provision dealing with the elimination
11  period reads (CF000022):

12  "Elimination Period" means a period of consecutive
days of Disability for which no benefit is payable.
13  The Elimination Period is shown in the Schedule of
Benefits and begins on the first day of Disability.
14

15  LONG TERM DISABILITY POLICY
COVERAGE
16

17  Elimination Period: 90 days

18  6.   Plaintiff Carr became unable to perform her regular occupation at

19
Defendant Providian on or around August 28, 2001 (Exhibit 2, copy of
20
letter from Plaintiff's main treating provider on or around August of 2001,
21
as quoted at CF000467 in Plaintiff's last appeal letter; CF000229; *see also*
22
CF000249; CF000351).
23

24  7.   The Social Security Disability Administration determined on September

25
27, 2003 that Plaintiff Carr became totally disabled and eligible for
26

27

28
COMPLAINT - 4

benefits on or around August 27, 2001 (CF000304-308).  Plaintiff Carr was granted a monthly benefit amount of $1,509.00 by the Social Security Disability Administration.

8.  Plaintiff Carr's disabling medical conditions and their symptoms prevented her from performing the material and substantial duties of her regular occupation at Defendant Providian, and continue to prevent her from performing any occupation Defendant Providian can make available to her, or from working in any reasonable occupation for which she can be fitted by education, training, or experience.

9.  As long as Plaintiff Carr meets the definitions of disability in the LTD policy, she is entitled to receive long-term disability benefits under the LTD policy until she reaches 65 years of age on or about October 16, 2014 (CF000462).

10.  Plaintiff Carr's date of disability was August 28, 2001, and she became eligible for LTD benefits as of August 29, 2001.  She was completely disabled during the 90-day elimination period and she remains completely disabled today.

11.  Plaintiff Carr's elimination period ended on November 27, 2001, 90 days after August 29, 2001 (CF000462).

COMPLAINT - 5

KRAFCHICK LAW FIRM
2701 First Avenue, Suite 340
Seattle, Washington 98121
(206) 374-7370  Fax (206) 374-7377

12.   Plaintiff Carr filed a claim with Defendant Liberty for benefits under the
LTD policy on or around November 29, 2001.  Defendant Liberty denied
this claim on or around January 22, 2002 (CF001094).

13.   Plaintiff Carr appealed on or around March 15, 2002 (CF001094), and
Defendant Liberty again denied the appeal on or around April 29, 2002
(CF000960).

14.   Plaintiff Carr filed yet another claim for benefits under the LTD plan on or
around July 28, 2003 (CF000937), which Defendant Liberty denied on or
around November 17, 2003 (CF000768).

15.   Plaintiff Carr submitted a comprehensive appeal letter to Defendant
Liberty on or about December 14, 2004 (CF000465), which included
medical records from Plaintiff's treating provider Carol L. Lamb, M.D.
(CF000171-212); Plaintiff's treating provider Rajiv Dixit, M.D.
(CF000213-248); consulting physician and nationally renowned
fibromyalgia expert Robert Bennett, M.D. (CF000249-303); nationally
renowned consulting physical capacities evaluator Theodore Becker,
Ph.D., RPT, (CF000309-350); consulting nationally renowned
neuropsychologist Jay Uomoto, Ph.D. (CF000351-381); consulting
vocational expert Donald Uslan, M.A., M.B.A. (CF000382-454); copy of
the Social Security Disability Administration's Notice of Award of

COMPLAINT - 6

**KRAFCHICK LAW FIRM**
2701 First Avenue, Suite 340
Seattle, Washington 98121
(206) 374-7370   Fax (206) 374-7377

Disability (CF000304-308); and copies of personal letters of support (CF000455-461).

16. Plaintiff Defendant Liberty denied Plaintiff's appeal yet again on January 28, 2005 (CF000021).

17. Plaintiff Carr primary treating provider on or around August 29, 2001 was Dr. Carol L. Lamb, M.D.

18. On or around January 3, 2002, Dr. Lamb wrote an Attending Physician's Statement to Defendant Liberty wherein she stated that Plaintiff Carr was suffering from gastroesophageal reflux disease, hypertension, fibromyalgia, and anxiety.

19. However, Dr. Lamb could not state that Plaintiff Carr had any physical work restrictions as she did not know the full effects of Plaintiff Carr's disabling fibromyalgia.

20. In October of 2001, Dr. Lamb referred Plaintiff Carr to rheumatologist Rajiv K. Dixit, MD, FACP, for further rheumatological workup.

21. Dr. Dixit established that Plaintiff Carr was unable to work and totally disabled (CF000229).

22. On October 1, 2004, Dr. Lamb wrote:

> During the period of February to August of 2001, I saw [Plaintiff Carr] on multiple occasions for varying complaints. These included joint aches, fatigue, rash,

COMPLAINT - 7

headaches and neck pain. The symptoms progressed, and I felt that there was likely a rheumatologic condition of some sort. I referred her to see Dr. Dixit, a local rheumatologist in August 2001. He ultimately diagnosed fibromyalgia and Sjögren's Syndrome.

In retrospect, I believe her condition was such that it did not allow her to do full work duties - I believe that her condition was at least a Class 3, if not worse (slight to moderate limitation of functional capacity). **I would defer to her rheumatologist's opinion regarding the degree to which her symptoms interfered with her ability to perform her usual job**. I do not believe there was a significant change in her symptoms from the time I saw her in August, 2001, until she was seen by Dr. Dixit in October of 2001.

23.    Dr. Lamb clarified her opinion regarding Plaintiff Carr's ability to work from August, 2001 through her elimination period.  Dr. Lamb defers to Plaintiff's Carr's rheumatologists (Dr. Dixit, Dr. Bennett) for further determination of Plaintiff's Carr's disability due to fibromyalgia.

24.    Plaintiff Carr first saw Dr. Dixit on October 24, 2001 (medical records at CF000213-248).  After taking a full history and physical examination, Dr. Dixit diagnosed Plaintiff Carr with Sjögren's syndrome, fibromyalgia syndrome, and hypertension, among other diagnoses.

25.    Dr. Dixit finds that Plaintiff Carr was completely disabled dating back to Plaintiff Carr's initial date of disability, August 29, 2001.  Dr. Dixit opines

COMPLAINT - 8

1

2

3    consistently over three years that Plaintiff Carr is completely disabled by

4    fibromyalgia, Sjögren's Syndrome, and their related symptomatology.

5    26.   In a report dated March 26, 2003, Dr. Dixit wrote, "This patient has been

6          disabled for a prolonged period of time. Her prognosis is poor.  She is

7
          totally and permanently disabled and unlikely to be able to return to any
8
9          form of employment." (CF000229).

10   27.   On September 2, 2004, Dr. Dixit wrote:

11
              I have reviewed the reports by Dr. Bennett and also the
12            report by Dr. Uomoto. I believe you have copies of these
              reports.  As you well know, Dr. Uomoto's feeling, in line
13            with my medical impression, is that the patient has
              cognitive disorder and fibromyalgia syndrome.  You also
14            know from the report of Dr. Bennett that the patient has
              fibromyalgia with an associated mood and sleep disorder. I
15            am in agreement with him that this developed during 2001.
              As noted by Dr. Bennett, despite long-standing and
16            appropriate treatment with a trial of multiple modalities, the
17            patient has not experienced any significant improvement in
              her symptoms.  Indeed, a case could be made for steady
18            deterioration of her symptoms.

19
              I will once again emphasize that the patient has long-
20            standing and severe fibromyalgia and that the symptoms of
21            this became disabling in the summer of 2001. The
              condition has resulted in total and permanent disability. I do
22            not believe that Mrs. Carr is employable.
23
24   28.   Plaintiff Carr was also seen by Robert Bennett, MD for a rheumatological

25         consultation on April 13, 2004 (records at 249-303, CV at CF000271-

26         303).

27

28

COMPLAINT - 9

**KRAFCHICK LAW FIRM**
2701 First Avenue, Suite 340
Seattle, Washington 98121
(206) 374-7370  Fax (206) 374-7377

29. Dr. Bennett is a board-certified rheumatologist and world-renowned expert on fibromyalgia.

30. He based his opinion on history, medical records, literature, and client examination.

31. Upon palpation, Plaintiff Carr was positive for 17 out of 18 fibromyalgia tender points.

32. Dr. Bennett wrote :

> Based on the information I reviewed, including my own history and physical examination, Plaintiff Carr is entirely disabled from being able to be competitively employed in the demanding and high stress jobs that she held up to 2001. The Social Security Administration has agreed that she is disabled and awarded her Social Security Disability pension retroactive to August of 2001 . . .
>
> The major reasons for Plaintiff Carr's disability are the constant musculoskeletal pain of fibromyalgia with its associated cognitive dysfunction and non-restorative sleep with associated fatigability. She also has a diagnosis of Sjögren's syndrome - this is a chronic autoimmune disorder that itself causes fatigue and varying degrees of disability. There is no known cure for Sjögren's syndrome and over time it may involve major organs such as the lungs, heart and brain. Patients with Sjögren's syndrome have a 44 fold risk of developing lymphoma. Her disability is compounded by a moderately severe mood disorder with both depression and anxiety components. Currently there is no cure for fibromyalgia or Sjögren's syndrome and at age 54 it is my opinion that Plaintiff Carr is permanently

COMPLAINT - 10

disabled and will not be able to be competitively
employed at any time in the future.  (CF000256).

33.    Renowned physical capacities evaluator Theodore Becker, Ph.D., RPT, performed

a physical capacity evaluation of Plaintiff Carr on May 4, 2004 (report CF000309-

350, CV at CF000340-350).

34.    Dr. Becker's report concludes that Plaintiff Carr is unable to perform the material

duties of her own or any other occupation.  She is completely and totally disabled.

35.    Dr. Becker's report conclusively states that Plaintiff Carr is work intolerant.

36.    Dr. Becker performed a battery of performance tests on Plaintiff Carr over a

period of 9.5 hours on two days, May 4-5, 2004.

37.    Regarding Plaintiff Carr's step test, Dr. Becker wrote:

> The overall physiological response shows significant
> dysfunction of tolerance, indicating inability to sustain
> activity.  There is exceptionally restricted physiology,
> which will indicate that tolerances of function cannot be
> sustained.  (CF000318).

38.    In addition, Dr. Becker put Plaintiff Carr through a Gait Evaluation/Physiology

test.  After the results of that test, Dr. Becker stated:

> The physiological response is exceptionally dysfunctional,
> showing inability to sustain activity.  The overall
> performance will indicate that she is unable to maintain
> physiological response associated with work environment.
> (*Id.*)

39.    Dr. Becker concluded:

COMPLAINT - 11

**KRAFCHICK LAW FIRM**
2701 First Avenue, Suite 340
Seattle, Washington 98121
(206) 374-7370  Fax (206) 374-7377

1

2

3          Exceptionally restricted with poor tolerance of sustainable
           application.  There is gross physiological challenge, which
4          indicates inability to sustain seated activity work, and also
           inability to sustain upright application work.  The overall
5          work tolerances in sedentary application should be
           identified as 4 to 8 beats above resting, or in this case at 68
6          b.p.m.  Her output response, which is inconsistent with the
7          expected linear and steady state output response.
           (CF000320).
8

9     40.   Dr. Becker agrees with Plaintiff Carr's other providers that she is completely and

10          totally disabled.  Thus he summarizes Plaintiff Carr's inability to work:

11

12          The physiological output response precludes her ability to
            sustain work in an ongoing basis, as required of
13          competitive and predictable work function.  Both
            sedentary/seated work and upright/standing work fails to
14          meet the criterion of acceptance in physiology of linear and
            steady state.  All work endeavors show decreasing
15          performance over time, with increasing physiological
            response of heart rate elevation.  (CF000321).
16

17    41.   Plaintiff Carr was also evaluated by preeminent neuropsychologist Jay M.

18          Uomoto, Ph.D. (records at CF000351-381)

19

20    42.   Dr. Uomoto is a licensed psychologist specializing in neuropsychology (CV at

21          CF000371-381).

22    43.   He is also a fellow and diplomate in medical psychotherapy of the American

23          Board of Medical  Psychotherapists and Psycho-diagnostician, and a professor in

24          the graduate department of psychology at Seattle Pacific University.

25

26

27

28
COMPLAINT - 12

1

2

44.   Dr. Uomoto found in his May 7, 2004 evaluation that Plaintiff Carr had

significant cognitive problems stemming from her fibromyalgia.

45.   In checking the validity of his testing he wrote:

> Given the patient's effort on the examination, behavioral
> presentation throughout testing procedures, and results of
> symptom validity testing, the patient's performance was
> judged to be a reflection of maximum effort.  Using the
> Slick Criteria the patient did not meet criteria for
> malingered neurocognitive dysfunction.  The patient also
> did not evidence behaviors or performances that are
> indicative of symptom enhancement or dissimulation.  The
> patient put forth a concerted effort on all tasks, and test
> results represent the patient's maximum cognitive capacity
> in the context of this evaluation.  (CF000355-356).

Dr. Uomoto discusses several areas where Plaintiff Carr has cognitive impairment

affecting her ability to work in any occupation by noting:

- Impairment in motor strength bilaterally
  Impaired oral word fluency (letter fluency) likely due to impaired
  information processing skill
- Alternating and divided attention deficits; likely to be easily derailed from
  the task at hand
- Impaired sustained attention ability where there is a demand for speeded
  and efficient processing of information
- Impaired verbal declarative memory when new learning and consistent
  recall is required
- Impaired visual-spatial learning ability upon single trial learning demands;
  and
- Problem-solving and adaptive reasoning impairment

46.   Dr. Uomoto concludes:

> The patient's current neuropsychological problems are likely to
> interfere with her prior work tasks.  The patient states that her work

KRAFCHICK LAW FIRM
2701 First Avenue, Suite 340
Seattle, Washington 98121
(206) 374-7370  Fax (206) 374-7377

1
2
3          required a significant degree of analytical thinking, problem-
           solving, trouble shooting, and working with complex concepts.
4          She was required to work very quickly, identify patterns in
           problems that arise in database management and in data
5          architecture aspects of her position, and to develop efficacious
           solutions to these problems.  The current results suggest she would
6          have difficulties with these types of analytical tasks, due to her
7          attention problems, difficulties with simultaneous processing
           secondary to alternating and divided attention demands.  Adaptive
8          reasoning deficits will also play a role in these daily work tasks.
9          She often is required to convey complex technical concepts to
           senior management, and this requires considerable problem-
10         solving ability.  Her cognitive impairments will make this difficult
11         to do. Problems with attention will likely impact her ability to
           sustain her effort on complex tasks in the work setting.  Due to
12         memory deficits, she will have trouble tracking and storing
           important information that may be provided to her incidentally.
13         This in turn will affect her problem-solving effectiveness.
14         Problems with chronic pain, sleep deprivation and fatigue also
           contribute to her cognitive problems.
15
16         On the basis of reasonable neuropsychological probability, and on
           a more likely than not basis, the patient is not competitively
17         employable on a full-time or part-time basis in her former position.
           I would concur with Dr. Dixit's conclusion of March 2003 that the
18         patient is not competitively employable in any position.
19         (CF000361-362).

20    47.  Plaintiff Carr was also evaluated by a vocational rehabilitation specialist Donald
21         Uslan, MA, MBA on May 5, 2004 (CF000382-454, CV at CF000427-454).
22
23    48.  Mr. Uslan evaluated Plaintiff Carr for employability.

24    49.  He reviewed records from her treating physicians and independent evaluators as
25         noted above, and also reviewed records from Defendant Liberty, and concluded
26         that, " . . . it is my opinion that she is totally and completely disabled from any and
27
28
COMPLAINT - 14

all employment, be it full or part-time, in any exertional level of employment."

(CF000425).

50.   Mr. Uslan also states:

> Plaintiff Carr is not able to work in the competitive labor
> market for gainful employment on a full-time basis, be it
> unskilled, semi-skilled or skilled level, or in the sedentary,
> light or medium exertional categories.  It is not reasonable,
> nor possible, for an employer to accommodate her medical
> conditions with her functional limitations at this time.
> Plaintiff Carr is not able to work at another position.

51.   Mr. Uslan concludes:

> As a licensed mental health counselor and certified
> rehabilitation counselor in clinical practice, it is my
> opinion, on a more-probable-than-not-basis, that Plaintiff
> Carr is totally and completely disabled.  I base this
> judgment on my professional experience in treating and
> evaluating hundreds of patients with the same or similar
> medical, physical and cognitive conditions as Plaintiff Carr,
> and in my professional capacity in having published and
> lectured extensively on this subject (disability, impairment
> and rehabilitation in rheumatologic conditions) . . . in
> consideration of her age, medical and physical condition,
> education and training.

52.   Plaintiff Carr also has friends and family who have written personal statements

regarding her disability.

53.   Plaintiff Carr's friend, Amy Chernay, wrote (CF000455):

> I have known Anita Carr for 23 years.  When she lived near
> me in Texas she was a very active adult. She volunteered
> for political campaigns and at her daughter's school.  She
> also had many other volunteer activities such as teaching

COMPLAINT - 15

1

2

3          computer skills to elementary aged school children,
           working on local arts projects, activities in her church and
4          PTA and volunteering at local museums to give docent
           tours. She also played tennis and I took 3-mile walks with
5          her regularly.  She was an active mother who had full
           responsibility for a young child. She also completed a
6          degree in graduate school.

7

8          Anita now complains of being in constant pain and being
           unable to carry out the duties taking care of her home as she
9          once had. She also complains of problems with her
           memory.
10

11   54.   Ellen Hancock wrote a letter supporting Plaintiff Carr's claim for disability

12         (CF000456-457):

13          . . . She has also been a successful businesswoman,
            working her way up into a Director level position at several
14          companies.  She has some very strong ethics and always
            had enjoyed her work in a highly technical field and put in
15          some very long days.
16

17          Anita skied, did white-water rafting & played tennis up
            until 2001, but she found it too painful to do these physical
18          activities since she diagnosed with fibromyalgia.

19
            Since the spring of 2001, Anita's health has been
20          problematic.  She has not been able to drive much & has
            complained of headaches, pain, dizziness, fatigue, heart
21          palpitations, nausea, memory issues & general malaise.
            She has consistently complained to me about these
22          symptoms and continues to do so.
23

24          Sometimes when I call her in the middle of the day I am
            waking her up from a long nap.  When I saw her on July
25          29th, 2004 and we went for a very short walk of several
            blocks, she became fatigued and her legs hurt.  That same
26

27

28                                                      **KRAFCHICK LAW FIRM**
                                                         2701 First Avenue, Suite 340
     COMPLAINT - 16                                        Seattle, Washington 98121
                                                        (206) 374-7370  Fax (206) 374-7377

1

2

3     day when we ate lunch, she arose from her dining chair in
      pain and moved very slowly.

4

5     On August 29th we went shopping and when we went into
      the first store, Anita wanted to find a place to sit and have
      tea in their small café, saying she was already tired.

6

7     55.     Plaintiff Carr's daughter, Elena Carr, wrote (CF000459):

8

9     I am the only child of Anita B. Carr and have a very close
      relationship with her.  Since she has been afflicted with
      fibromyalgia, her energy levels have dropped dramatically.

10    Sometimes she has trouble simply getting out of bed and is
      forced to take several rests throughout the day.

11

12    Her ability to function in normal situations has dramatically
      decreased. Recently, my mother and I visited Las Vegas.

13    We had just arrived and checked into the hotel.  After my
      mom took a nap, we went out to explore the strip.  We had

14    only walked a few blocks when she could go no further.
      Her frustration with the pain quickly turned to tears and we

15    had to sit for twenty minutes before she could muster the
      energy to return to the hotel, where she promptly went back

16    to bed.  This is the same woman who would drive me to
      Yosemite for a weekend and wake up at the crack of dawn

17    for an all-day hike to Vernal Falls.

18

19    56.     Plaintiff Carr wrote (CF000460-461):

20

21    Starting in January of 2001 I began experiencing severe headaches,
      severe neck pain, severe arm & hand pain, numbness & tingling in

22    my hands, moderate back pain, moderate leg & knee pain,
      overwhelming tiredness, weakness, mental confusion &

23    forgetfulness.  I had very dry eyes and was using eye drops several
      times a day.  I had to go home on many lunch hours to just sleep

24    and fortunately I lived 5 minutes from my office.  I found that I had
      no energy in the morning after awakening from at least 7 hours of

25    sleep.  I felt very tired & weak and felt like I could not even go to
      work.  I forced myself.  I typically worked a 10 hour day.

26

27

28

COMPLAINT - 17

KRAFCHICK LAW FIRM
2701 First Avenue, Suite 340
Seattle, Washington 98121
(206) 374-7370  Fax (206) 374-7377

1

2

3

4

5

6

7

8

I finally felt that I could not continue to work. I was exhausted. I was having more serious memory issues (even once forgetting the name of a former employee from SBC Corporation who had come to work at Providian) and I was living in pain. I could not keyboard due to the pain in my hands/wrists/arms. I could not concentrate in meetings and I would lose track of my train of thoughts. I had headaches every day. My last day of work was Aug. 28, 2001.

9

10

11

After I left the work environment I would wake up in the morning and then feel so tired I had to go right back to sleep and I would sleep 3-4 hours of very deep sleep. I had no energy. On some days I was in too much pain to get out of bed.

12

13

14

15

16

I continue to experience headaches, severe pain, overwhelming tiredness and cognitive problems. Again, the symptoms wax and wane. I seem to have somewhat better days if it is warm and the pressure is high. Other days, for no real reason, I cannot get out of bed due to the pain. Even the bottom of my feet hurt to walk on them.

17

18

I typically try to read the morning newspaper when I wake up, but most often I cannot stay focused on a single article to read through it.

19   57.   All of Plaintiff Carr's providers agree she continues to be severely disabled and

20   can no longer meet the requirements of full time work in her own or any other

21   occupation, and that this has been so since August 28, 2001 or sooner.

22

23   58.   Plaintiff Carr fulfills Liberty Life's definition of disability as she, since August 29,

24   2001, has been unable to perform, with reasonable continuity, all of the material

25   and substantial duties of her own or any other occupation for which she is or could

26

27

28

COMPLAINT - 18

**KRAFCHICK LAW FIRM**
2701 First Avenue, Suite 340
Seattle, Washington 98121
(206) 374-7370  Fax (206) 374-7377

become reasonably fitted by training, education, experience, age and physical and mental capacity dating back to August 29, 2001.

59.    Plaintiff Carr was completely and totally disabled throughout the entire elimination period as discussed by her doctors and independent evaluators.

### III.  RIGHT TO BENEFIT UNDER ERISA

Plaintiff Carr adopts and alleges all of the foregoing, and alleges the following:

1.    The LTD policy at issue in this case may be determined by the Court to be an "employee welfare benefit plan" or a "welfare plan," as defined in §1002 of *The Employment Retirement Income Security Act*, 29 U.S.C., § 1001, *et seq.* ("ERISA").

2.    If this Court finds that the disability insurance purchased from Defendant Liberty is governed by ERISA, Plaintiff Carr alleges that Defendant Liberty violated federal statutory and common law duties owed to Plaintiff Carr when Defendant Liberty terminated her benefits.

3.    Defendant Liberty's breach of the duties it owed to Plaintiff Carr proximately caused Plaintiff Carr damages that were natural and foreseeable consequences of Defendant Liberty's wrongful conduct.

4.    Plaintiff has the express right and standing under ERISA § 1132 to bring a cause of action against Defendant Liberty to enforce her rights and recover the benefits

COMPLAINT - 19

she is due under the terms of her LTD policy, and to clarify her rights to future benefits under the terms of the LTD policy.

5.   Under ERISA, Plaintiff Carr has the right to recover the reasonable attorneys' fees and costs she incurred in this action against Defendant Liberty, should the Plaintiff establish her rights to recover the disability benefits terminated and denied her by Defendant Liberty.

### IV.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Carr prays for judgment against Defendant Liberty in an amount that compensates Plaintiff Carr for damages she sustained:

1.   Declaratory judgment and an injunction providing that the Court enforce Defendants' continuing obligations owed Plaintiff on her long-term disability policy, and that Defendants cannot decline to pay her in the future for reasons wrongfully relied on to the time of judgment;

2.   An award of full benefits due Plaintiff under the Plan from the time of initial entitlement to benefits, August 29, 2001, to the date of judgment in favor of Plaintiff in this case; and

3.   For Plaintiff's attorney fees, costs, and disbursements incurred by bringing this cause of action, along with pre-judgment interest and any other relief permitted by law, which the Court deems just and equitable.

COMPLAINT - 20

1

2

3    Dated August 2, 2005:                    Dated August _____, 2005:

4    KRAFCHICK LAW FIRM                       PILLSBURY LEVINSON, LLP

5

6    By:                                      By:
7    Steven P. Krafchick, WSBA #13542         Arnold Levinson California Bar No. 66583
     Attorney for Plaintiff                   Pillsbury & Levinson LLP
8    Pro Hac Vice Application pending         600 Montgomery St., 31st Flr.
9    Krafchick Law Firm                       San Francisco, CA 94111
     2701 First Avenue, Suite 340             T: (415) 433-8000 F: (415) 433-4816
10   Seattle, WA 98121                        Email: alevinson@pillsburylevinson.com
11   T: 206.374.7370  F: 206.374.7377
     Email: klf@krafchick.com
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
     COMPLAINT - 21                                      **KRAFCHICK LAW FIRM**
                                                          2701 First Avenue, Suite 340
                                                           Seattle, Washington 98121
                                                       (206) 374-7370   Fax (206) 374-7377