1    PAMELA E. COGAN (SBN 105089)
    pcogan@ropers.com
2    KATHRYN C. CURRY (SBN 157099)
    kcurry@ropers.com
3    ERIN A. CORNELL (SBN 227135)
    ecornell@ropers.com
4    ROPERS, MAJESKI, KOHN & BENTLEY
    1001 Marshall Street
5    Redwood City, CA 94063
    Telephone:    (650) 364-8200
6    Facsimile:    (650) 780-1701

7    Attorneys for Defendant
    LIBERTY LIFE ASSURANCE COMPANY OF
8    BOSTON

9             UNITED STATES DISTRICT COURT

10         NORTHERN DISTRICT OF CALIFORNIA

11                SAN FRANCISCO

12

13    ANITA B. CARR,                  CASE NO. C 05-3190 TEH

14           Plaintiff,          **LIBERTY LIFE ASSURANCE COMPANY OF BOSTON'S NOTICE OF MOTION**

15    v.                      **AND MOTION TO DISMISS COMPLAINT**

16    LIBERTY LIFE ASSURANCE       **[F.R.Civ.P. 12(b)(6)]**
    COMPANY; PROVIDIAN BANCORP
17    SERVICES,                Date:      October 31, 2005
                                Time:      10:00 a.m.
18           Defendants.       Dept.      12, 19th Floor

19                          **Honorable Thelton E. Henderson**

20

21

22

23

24

25

26

27

28

LIBERTY LIFE ASSURANCE COMPANY OF
BOSTON'S MOTION TO DISMISS – CASE NO
C 05-3190 TEH

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

**TO PLAINTIFF, ANITA B. CARR, AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 31, 2005 at 10:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 12 of the above-entitled court located at 450 Golden Gate Ave., San Francisco, California, defendant Liberty Life Assurance Company of Boston ("Liberty") will, and hereby does, move this Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing the complaint with prejudice. The motion is brought on the ground plaintiff's claim for disability benefits arose after August 28, 2001, when she was no longer a participant in the Providian Bancorp Services, Inc. Disability Income Plan and no longer covered under the Liberty policy insuring the Plan. This motion is also brought on the independent ground that plaintiff's action is barred because she previously released her claims for employee benefits, including long-term disability pursuant to a severance agreement entered into between plaintiff and defendant Providian Bancorp Services, Inc. on or about September 21, 2001. The severance agreement and release are included in Exhibit 1 attached to the complaint.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Complaint and Exhibits attached thereto, the all other pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

Dated: September 16, 2005                    ROPERS, MAJESKI, KOHN & BENTLEY

By: _Kathryn C. Curry_____
      PAMELA E. COGAN
      KATHRYN C. CURRY
      ERIN A. CORNELL
      Attorneys for Defendant
      LIBERTY LIFE ASSURANCE
      COMPANY OF BOSTON

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1

**TABLE OF CONTENTS**

2
                                                                                    **Page**

3   I.    INTRODUCTION ..................................................................................................2

4   II.   STATEMENT OF FACTS ...................................................................................3

5         A.    PROVIDIAN TERMINATES PLAINTIFF'S EMPLOYMENT ON
                AUGUST 28, 2001 ....................................................................................3

6         B.    PLAINTIFF'S BACKGROUND, TRAINING AND EXPERIENCE ..................5

          C.    PLAINTIFF'S CLAIM FOR LONG TERM DISABILITY ...........................5
7
          D.    PLAINTIFF FILES SUIT AGAINST LIBERTY AND PROVIDIAN ..............6
8
          E.    THE LIBERTY GROUP DISABILITY INCOME POLICY .........................7
9   III.  LEGAL ARGUMENT...........................................................................................7

10        A.    PLAINTIFF'S COMPLAINT IS SUBJECT TO DISMISSAL PURSUANT
                TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL
                PROCEDURE ............................................................................................7
11
          B.    PLAINTIFF'S CLAIM FOR LONG-TERM DISABILITY BENEFITS IS
12              FORECLOSED BECAUSE SHE WAS NO LONGER COVERED
                UNDER THE LIBERTY POLICY AFTER AUGUST 28, 2001.....................9
13
          C.    PLAINTIFF'S ACTION IS BARRED BY THE PRIOR SEVERANCE
                AGREEMENT AND RELEASE..................................................................10
14
                1.    Plaintiff Released Her Claim .........................................................10
15
                2.    Plaintiff Knowingly and Voluntarily Waived Her Claim for
16                    Disability Benefits .......................................................................12

    IV.   CONCLUSION....................................................................................................14

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON'S ANSWER TO THE
COMPLAIN C 05-3190 BZ

1

2

## TABLE OF AUTHORITIES

### FEDERAL CASES

3

Brae Transportation v. Coopers & Lybrand,
   790 F.2d 1439 (9th Cir. 1986) ...................................................................11

4

5

Branch v. Tunnell,
   14 F.3d 449 (9th Cir. 1994) ..........................................................................8

6

Chambers v. Time Warner, Inc.,
   282 F.3d 147 (2nd Cir. 2002) .......................................................................8

7

8

Chaplin v. Nations Credit Corp.,
   307 F.3d 368 (5th Cir. 2002) ......................................................................13

9

In re: Delorean Motor Co.,
   991 F.2d 1236 (6th Cir. 1993) ......................................................................7

10

11

Evans v. Safeco Life Insurance Co.,
   916 F.2d 1437 (9th Cir. 1990) ....................................................................10

12

Finz v. Schlesinger,
   957 F.2d 78 (2d Cir.), cert. denied, 113 S.Ct. 72 (1992) ....................10, 12

13

14

Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,
   896 F.2d 1542 (9th Cir. 1989) ......................................................................8

15

Kauffman & Broad-South Bay v. Unisys Corp.,
   822 F. Supp. 1468 (N.D.Cal. 1993) ..............................................................8

16

17

Lanoik v. Advisory Committee of Brainerd Manufacturing Co. Pension Plan,
   935 F.2d 1360 (2d Cir. 1991) .....................................................................10

18

Leavitt v. Northwestern Bell Telephone Co.,
   921 F.2d 160 (8th Cir. 1991) ................................................................10, 12

19

20

Martino-Catt,
   317 F. Supp. 2d at 924 ................................................................................13

21

Paulemon v. Tobin,
   30 F.3d 307 (2nd. Cir. 1994) ........................................................................8

22

23

Pension Benefit Guar. Corp. v. White Consolidated Industries, Inc.
   998 F.2d 1192 (3rd Cir. 1993) ......................................................................8

24

Piehl v. Metropolitan Life Insurance Co.,
   2005 U.S. Dist. LEXIS 4619 (D.C. Ore. 2005) ..........................................12

25

Pilot Life Insurance Co. v. Dedaux,
   481 U.S. 41, 95 L. Ed. 2d 39, 107 S. Ct. 1549 (1987) ...............................10

26

27

Richardson v. Pension Plan of Bethlehem Steel Corp.,
   112 F.3d 982 (9th Cir. 1997) ......................................................................10

28

Robertson v. Dean Witter Reynolds, Inc.,
    749 F.2d 530 (9th Cir. 1984) ................................................................................7

Rodriguez-Abreu v. Chase Manhattan Bank,
    986 F.2d 580 (1st Cir. 1993)................................................................................10

Smart v. The Gillette Company Long-Term Disability Plan,
    70 F.3d 173 (1st Cir. 1995).................................................................9, 10, 11, 12

Thacker v. New York Life Insurance Co.,
    796 F. Supp. 1338 (E.D. Cal. 1992) ...............................................................7, 8

United States v. Nunez,
    223 F.3d 956 (9th Cir. 2000) ..............................................................................10

Western Mining Counsel v. Watt,
    643 F.2d 618 (9th Cir. 1981) ................................................................................7

Wilson Arlington Co. v. Prudential Insurance Co. of America,
    912 F.2d 366 (9th Cir. 1990) ..............................................................................10

**FEDERAL STATUTES**

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.....passim

**SECONDARY AUTHORITY**

Ronald J. Cooke, ERISA Practice and Procedure § 2.08, at 2-28 (1995)...........................9

1

2   **REQUESTED RELIEF**

Defendant Liberty Life Assurance Company of Boston seeks an order from this Court

3   pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing plaintiff Anita

4   Carr's complaint against it with prejudice. Liberty is entitled to the requested relief, because

5   plaintiff was no longer a participant in, or covered under, the group disability policy issued to

6   plaintiff's employer at the time of her alleged disability. Moreover, plaintiff's claim against

7   Liberty fails because she expressly released her claims for employee benefits, including long-term

8   disability, which is the subject of this action, pursuant to a severance agreement and release

9   executed between plaintiff and her former employer, Providian Bancorp Services on or about

10   September 21, 2001. A copy of the severance agreement and release were attached as part of

11   Exhibit 1 to the complaint.

12   **MEMORANDUM OF POINTS AND AUTHORITIES**

13   **I. INTRODUCTION**

14   This action, brought pursuant to the Employee Retirement Income Security Act of 1974

15   ("ERISA"), arises out of the denial of plaintiff's claim for long term disability income benefits.

16   In this action, plaintiff seeks recovery of and a declaration of her entitlement to long term

17   disability benefits under the long term disability plan established by her former employer,

18   Providian Bancorp Services, Inc. The Providian long term disability plan was insured by a Group

19   Disability Income policy issued by Liberty to Providian.

20   Plaintiff action is foreclosed, because her claim for disability benefits arose after she was

21   no longer a participant in the Providian Long Term Disability Plan and covered under the Liberty

22   policy. Moreover, plaintiff's claims against Liberty must fail because she expressly released her

23   claims for employee benefits, including long-term disability benefits, pursuant to a severance

24   agreement and release entered into by plaintiff and her former employer, Providian Bancorp

25   Services on or about September 21, 2001. Accordingly, Liberty's motion to dismiss the

26   complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure must be granted.

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

# II. STATEMENT OF FACTS

## A. PROVIDIAN TERMINATES PLAINTIFF'S EMPLOYMENT ON AUGUST 28, 2001

Plaintiff worked for Providian Bancorp Services, Inc. from October 19, 1998 until August 28, 2001, when her employment was terminated. (Complaint ¶ 1 and 3; Exhibit 1 to Complaint, p. CF 91.)[1]  Prior to her termination, plaintiff was the Director of Data Services and her salary was approximately $135,000 a year plus year-end bonuses. (Complaint ¶ 2.)  On August 28, 2001, the date of her termination, plaintiff received a letter notifying her of her eligibility to participate in the Providian Financial Corporation Severance Pay Plan. ("Notice of Eligibility".)  The letter provided in part:

> "This letter is your **Notice of Eligibility** in accordance with Section 2.7 of the **Providian Financial Corporation Severance Plan** (the "Plan"). A copy of the Plan is enclosed with this letter. In order to become eligible for the benefits described in this Notice of Eligibility, you must execute and return a copy of (i) this letter, (ii) the General Release, attached to this letter as Exhibit A, and (iii) the Acknowledgement of Confidentiality Agreement, attached to this letter as Exhibit B." (CF 91.)

Pursuant to the letter, if plaintiff elected to participate in the Providian Severance Pay Plan, she could maintain her status as an active employee until November 28, 2001 ("Separation Date"), during which time she would continue to receive her regular base salary, her health care coverage, and would continue to vest in the employer match and retirement contribution portions of her 401(k) Plan, as fully detailed in the letter. (CF 91 to CF 92.)  Aside from her continued salary, health care coverage, 401(k) contribution and payment of services of an outplacement consultant up to three months, plaintiff would not receive any other employee benefits and any and all claims to other employee benefits were expressly waived pursuant to a General Release attached to the Notice of Eligibility letter. (CF 92, ¶ 4, 5.)

> **4. Other Compensation or Benefits.**  You acknowledge that, except as expressly provided in this Notice of Eligibility, you will not receive any additional compensation, separation payments or benefits from the Company.
>
> **5. General Release.**  In exchange for the payments and other

[1] References herein to "CF #" refer to the page number of the claim file attached as Exhibit 1 to the complaint, which was bate labeled CF 001 to CF 1112.

benefits under this Notice of Eligibility to which you would not otherwise be entitled, you agree to execute and be bound by the General Release attached hereto as Exhibit A." (CF 92.)

The General Release attached as Exhibit A to the Notice of Eligibility provided:

"1.   I hereby release, acquit and forever discharge Providian Bancorp Services (the "Company"), its parent, subsidiaries and affiliates, and their officers, directors, employees and agents, and all others, of and from any and all claims, liabilities, demands, causes of action, costs, expenses, or otherwise, known and unknown, suspected and unsuspected, disclosed and undisclosed, arising out of or in any way related to agreements, events, acts or conduct at any time prior to and including the date of this release, including but not limited to all claims or demands directly or indirectly arising out of or in any way connected with my employment, benefits, and/or compensation with the Company, or the termination of my employment, including but not limited to common law claims and/or claims under Title VII of the Civil Rights Act of 1964, the Federal Age Discrimination in Employment Act of 1967, as amended (ADEA"), the Americans with Disabilities Act, the California Fair Employment and Housing Act, and/or any other federal state, or local statute.

2.   I acknowledge that I am knowingly and voluntarily waiving and releasing any rights I may have under the ADEA. I also acknowledge that the consideration given for the waiver and release in the preceding paragraph hereof is in addition to anything of value to which I was already entitled. I acknowledge that this Agreement and General Release is written in a manner calculated to be understood by me. I further acknowledge that I have been advised by this writing, as required by the ADEA and the Older Workers Benefit Protection Act, that: (a) my waiver and release do not apply to any rights or claims that may arise after the execution of this release; (b) I should consult with an attorney prior to executing this release; (c) I have twenty-one (21) days to consider this release (although I may choose to voluntarily execute this release earlier); (d) I have seven (7) days following the execution of this release to revoke the release; (e) this release shall not be effective until the revocation period has expired, *i.e.*, as of the eighth day after this release is executed by me (the "Effective Date"); and (f) at the time I was provided with a copy of this Release and the Agreement to which it is attached.

3.   In giving this release, which includes claims which may be unknown to me at present, I acknowledge that I have read and understand Section 1542 of the California Civil Code which reads as follows: **'A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.'** I hereby expressly waive and relinquish all rights and benefits under that section." (CF-94, emphasis in original.)

If plaintiff did not accept the terms of the Severance Pay Plan as outlined in the letter, her

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON'S MOTION TO DISMISS – CASE NO C 05-3190 TEH

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1  separation date would be August 28, 2001. (CF 91 ¶ 2.) Plaintiff signed the Notice of Eligibility

2  and the General Release on September 21, 2001. (CF 91, CF 94.) The following paragraph

3  immediately preceding plaintiff's signature on the Notice of Eligibility provided:

> "By my signature below, I acknowledge that I have carefully
> reviewed and considered this Notice of Eligibility; that I understand
> the terms of the Notice of Eligibility; and that I voluntarily agree to
> them." (CF 93.)

**B.  PLAINTIFF'S BACKGROUND, TRAINING AND EXPERIENCE**

Plaintiff received a Bachelor of Science degree in biology/microbiology from the
University of Nevada. She obtained 44 credits towards a Master's Degree in Computer Science
and Math from Texas Women's University. She also received an M.T. A.S.C.P. in medical
technology from Western Clinical in Reno, Nevada. (CF 110, 821.)

Plaintiff was a Director of Data Services at Providian. (Complaint p. 3¶ 2.) Before
joining Providian, she was a technical director for Pacific Bell/SBC from 1996 to 1998. From
1991 to 1993 and again from 1995 to 1996, plaintiff ran her own consulting company. From
1993 to 1995, plaintiff was a Corporate MIS Manger with Western Medical Services in Walnut
Creek, California. (CF 110, 821.)

**C.  PLAINTIFF'S CLAIM FOR LONG TERM DISABILITY**

On or around November 29, 2001, three months after she allegedly became disabled,[2]
plaintiff submitted a claim to Liberty for disability income benefits under the Providian Group
Disability Income policy. (Complaint, p. 6 ¶ 12.) Because Liberty was unaware that plaintiff had
been terminated by Providian on August 28, 2001 or that she had entered into the Severance
Agreement and Release, it processed the claim. (CF 1088.)[3] After receiving notification of the
claim, Liberty requested plaintiff's treating doctor to complete and return an Attending
Physician's Statement ("APS"), which was received by Liberty on January 3, 2002. (CF 1099 to
CF 1100.)

The APS completed by plaintiff's primary treating physician, Carol L. Lamb, M.D. listed

---

[2]  Plaintiff alleges she became ill and disabled while working for Providian, "with a date of disability of August 29, 2001." (Complaint p. 3, ¶ 3 )
[3]  Liberty did not receive a copy of the Severance Agreement until January 19, 2005  (CF 91, Liberty date stamp )

LIBERTY LIFE ASSURANCE COMPANY OF
BOSTON'S MOTION TO DISMISS – CASE NO.
C 05-3190 TEH

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   diagnoses of gastroesophageal reflux disease (GERD), hypertension, fibromyalgia and anxiety.

2   (CF 1099 to CF 1100.) Dr. Lamb, however, also indicated on the APS Statement that plaintiff

3   had not been advised to cease working and <u>she had</u> <u>no work restrictions</u> and <u>no limitations of</u>

4   <u>functional capacity and was capable of performing work</u>. (CF 1099 to CF 1100.)

5          On January 22, 2002, plaintiff confirmed during a telephone conversation with Liberty

6   that <u>none of her doctors had told her to stop working or that she was disabled</u>. (CF-1089 to CF

7   1090.) That day, Liberty sent plaintiff a letter denying her claim for disability benefits.

8   (Complaint, ¶ 12, CF-1097 to CF 1098.) Plaintiff appealed the denial on or about March 15,

9   2002. (Complaint, ¶ 13, CF-1094.) After requesting, receiving and reviewing records from her

10  various medical providers, Liberty upheld its initial denial on April 29, <u>2002</u>. (CF-0960 to CF

11  961.)

12         On July 28, <u>2003</u>, almost two years after the termination of her employment, and 15

13  months after Liberty had upheld the denial of her claim on appeal, plaintiff submitted another

14  claim to Liberty for benefits under the long term disability plan based on the same date of

15  disability – August 29, 2001. (Complaint, ¶¶ 14, 25.) After conducting an investigation,

16  including obtaining two physician reviews, Liberty denied the claim on or around November 17,

17  <u>2003</u>. (CF 768.) The denial letter advised plaintiff of her right to file an appeal and that she had

18  180 days within which to file an appeal. (CF 773.)

19         On December 14, <u>2004</u>, more than one year after the denial, plaintiff appealed Liberty's

20  November 17, 2003 decision. (Complaint ¶ 15; CF 465.) On January 28, 2005, after

21  consideration of the untimely appeal, Liberty sent a comprehensive and detailed letter to plaintiff

22  upholding its denial for her claim for long term disability. (Complaint ¶ 16; CF 21 to CF 28.)

23  **D.    PLAINTIFF FILES SUIT AGAINST LIBERTY AND PROVIDIAN**

24         On August 5, 2005, plaintiff filed this lawsuit against Liberty and Providian seeking

25  enforcement of her rights and recovery of long-term disability benefits under the long-term

26  disability insurance policy issued by Liberty to Providian. (Complaint, pp. 19-20.) The policy

27  issued by Liberty is an "employee benefit plan" as defined in § 1002 of The Employee

28  Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. (Complaint, p. 19:10-14)

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   and plaintiff's claim is governed by ERISA.  (Complaint p. 2, ¶ 6.)  A copy of Liberty's claim file

2   as it existed as of February 2005 was attached as Exhibit 1 to the complaint.

3   **E.      THE LIBERTY GROUP DISABILITY INCOME POLICY**

4          Liberty issued a Group Disability Income Policy to Providian Bancorp Services, policy

5   number GD3-860-038942-01/GF3-860-038942-01, effective January 1, 2000.  (Exhibit A to

6   Decl. of Karen McKenzie.)  The policy provided short and long term disability coverage to

7   eligible employees of Providian.  (Exhibit A to McKenzie Decl.)  The policy provides in relevant

8   part:

9          **"Termination of Covered Person's Insurance**

10         A Covered Person will cease to be insured on the earliest of the
           following dates:

11         * * *

12
           5.  the date employment terminates. . . . (Exhibit A to McKenzie
13         Decl., p. P-033.)

14                            **III.  LEGAL ARGUMENT**

15  **A.     PLAINTIFF'S COMPLAINT IS SUBJECT TO DISMISSAL PURSUANT TO
            RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**
16
           Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be
17
    dismissed for failure to state a claim upon which relief may be granted.  A complaint may be
18
    dismissed under Rule 12(b)(6) for two reasons:  "(1) lack of a cognizable legal theory or (2)
19
    insufficient facts under a cognizable claim."  (Robertson v. Dean Witter Reynolds, Inc., 749 F.2d
20
    530, 534 (9th Cir. 1984).)  A motion to dismiss should granted where, as here, the plaintiff can
21
    prove no set of facts in support of the claim which would entitle him or her to relief.  (Thacker v.
22
    New York Life Ins. Co., 796 F.Supp. 1338, 1339 (E.D. Cal. 1992).)
23
           "On a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the allegations of the
24
    complaint must be accepted as true."  (Thacker v. New York Life Ins. Co., supra, 796 F.Supp. at
25
    1339.)  However, the court need not accept as true conclusory allegations, legal characterizations,
26
    unreasonable inferences or unwarranted deductions of fact.  (In re: Delorean Motor Co., 991 F.2d
27
    1236, 1240 (6th Cir. 1993); Western Mining Counsel v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).)
28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RC1/381140 1/KCC                    - 7 -        LIBERTY LIFE ASSURANCE COMPANY OF
                                                 BOSTON'S MOTION TO DISMISS – CASE NO
                                                 C 05-3190 TEH

1  Further, it is improper for the court to assume "...the [plaintiff] can prove facts which [he or she]

2  has not alleged or that the defendants have violated...laws in ways that have not been alleged."

3  (Thacker v. New York Life Ins. Co., supra, 796 F.Supp. at p. 1339.)

4      In support of a motion to dismiss, the Court may properly consider the exhibits attached to

5  the complaint. Material properly submitted with the complaint may be considered as part of the

6  complaint for purpose of a Rule 12(b)(6) motion to dismiss. (Hal Roach Studios, Inc. v. Richard

7  Feiner & Co., Inc., 896 F.2d 1542, 1555 (9th Cir. 1989); Paulemon v. Tobin, 30 F.3d 307, 308-

8  309 (2nd. Cir. 1994).) Documents attached to the complaint and incorporated therein by

9  reference are treated as part of the complaint for purposes of a Rule 12(b)(6) motion. (Kauffman

10  & Broad-South Bay v. Unisys Corp., 822 F.Supp. 1468, 1472 (N.D.Cal. 1993).) Here, the

11  severance agreement and release executed between plaintiff and Providian Bancorp Services, Inc.

12  releasing her claims for employee benefits, including long term disability was contained in the

13  documents attached by plaintiff as Exhibit 1 to the Complaint, pages CF 91 to CF 97. Exhibit 1

14  to the complaint is a copy of Liberty's claim file as it existed as of February 17, 2005.

15  (Complaint ¶ 1, Exhibit 1 p. CF 01.)

16      Moreover, documents not physically attached to the complaint may also be considered by

17  the court on a 12(b)(6) motion to dismiss if the complaint refers to such document and the

18  document is "central" to plaintiff's claim. (Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994);

19  Chambers v. Time Warner, Inc., 282 F.3d 147, 153, fn. 3 (2nd Cir. 2002).) This prevents "a

20  plaintiff with a legally deficient claim (from surviving) a motion to dismiss simply by failing to

21  attach a dispositive document on which it relied." (Pension Benefit Guar. Corp. v. White

22  Consolidated Industries, Inc. (3rd Cir. 1993) 998 F.2d 1192, 1196 (parentheses added).)

23      The Group Disability Income policy issued by Liberty to Providian is central to plaintiff's

24  claim, because she is seeking long-term disability benefits under the Liberty policy, which is

25  referenced throughout the complaint. (Complaint pp. 19-20.) Thus, although plaintiff did not

26  attach a copy of the Liberty policy to her Complaint, the court may properly consider the actual

27  terms and conditions of the policy that is referred to in her complaint in support Liberty's motion

28  to dismiss. A true and correct copy of the Liberty policy is attached as Exhibit A to the

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RC1/381140 1/KCC

- 8 -

1    Declaration of Karen McKenzie filed concurrently herewith.

2    **B.    PLAINTIFF'S CLAIM FOR LONG-TERM DISABILITY BENEFITS IS
3          FORECLOSED BECAUSE SHE WAS NO LONGER COVERED UNDER THE
          LIBERTY POLICY AFTER AUGUST 28, 2001.**

4          Plaintiff's action seeks recovery of long term disability benefits under the Liberty Group

5    Disability Income Policy issued to her former employer, Providian. Plaintiff's action, however, is

6    subject to dismissal, because she was no longer a participant in the Providian long term disability

7    plan after August 28, 2001 and her subsequent claim for disability income benefits under the

8    policy was not covered.

9          Plaintiff's employment at Providian was terminated on August 28, 2001. (CF 91.)

10   Because coverage under the policy ends if the Covered Person's employment is terminated

11   (Exhibit A to Decl. of McKenzie, p. P-033), plaintiff was no longer a participant in or a Covered

12   Person under the Liberty policy after August 28, 2001. Although health care coverage and 401(k)

13   contribution benefits were extended for three months under the Severance Agreement, no other

14   employee benefits, including long term disability coverage, were continued after August 28,

15   2001. (CF 91 to CF 92.) Accordingly, plaintiff's coverage under the policy ended on August 28,

16   2001.

17         The Liberty policy provides, "For the purpose of determining Disability, the Injury must

18   occur and the Disability must begin while the Employee is insured for this coverage." (Ex. A to

19   McKenzie Decl. p. P-019 [short-term], P-023 [long-term].) Because plaintiff's alleged date of

20   disability is August 29, 2001 (Complaint ¶ 3) and she did not submit a claim for benefits until late

21   November 2001, more than three months after her coverage ended, her present action for benefits

22   is barred. (Exhibit A to McKenzie Decl., pp. P-019, P-023, P-033; see also, Smart v. The Gillette

23   Company Long-Term Disability Plan, 70 F.3d 173 (1st Cir. 1995).)

24         It is fundamental that "ERISA affords no rights or protections to those who are not

25   participants" in a benefit plan. (Ronald J. Cooke, ERISA Practice and Procedure § 2.08, at 2-28

26   (1995).) Because plaintiff was no longer a participant in the plan after August 28, 2001 and her

27   subsequent claim for disability income benefits under the policy was not covered, Liberty's

28   motion to dismiss must be granted.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RC1/381140 1/KCC        - 9 -        LIBERTY LIFE ASSURANCE COMPANY OF
                                      BOSTON'S MOTION TO DISMISS – CASE NO
                                      C 05-3190 TEH

**C.    PLAINTIFF'S ACTION IS BARRED BY THE PRIOR SEVERANCE
AGREEMENT AND RELEASE**

Even if plaintiff's claim was covered under the Liberty policy, which it is not, her complaint against Liberty is still barred because she released her claim pursuant to the Severance Agreement and Release signed by plaintiff on September 21, 2001.  Although Congress, in enacting and amending ERISA, has indicated a strong interest in preserving the rights enumerated within the statute (See, Lanoik v. Advisory Comm. of Brainerd Mfg. Co. Pension Plan, 935 F.2d 1360, 1367 (2d Cir. 1991)), a person's ability and right to release his or her rights under ERISA has been established.  (See, Leavitt v. Northwestern Bell Telephone Co., 921 F.2d 160 (8th Cir. 1991); Rodriguez-Abreu v. Chase Manhattan Bank, 986 F.2d 580 (1st Cir. 1993); Finz v. Schlesinger, 957 F.2d 78 (2d Cir.), cert. denied, 113 S.Ct. 72 (1992); Lanoik, supra, 935 F.2d 1360.)  Here, plaintiff expressly released any and all claims for employee benefits, including disability income benefits under the Providian Plan (the very subject matter of this action) on September 21, 2001 when she signed the Severance Agreement and Release.

**1.    Plaintiff Released Her Claim**

Because the Severance Agreement and Release pertained to the extension and surrender of various employee benefits provided by Providian, which are subject to ERISA, the interpretation of the agreement is subject to interpretation in accord with the tenets of federal common law. (Pilot Life Ins. Co. v. Dedaux, 481 U.S. 41, 56, 95 L.Ed.2d 39, 107 S.Ct. 1549 (1987); Smart v. The Gillette Company Long Term Disability Plan, supra, 70 F.3d at 178.)  Under federal common law, the terms of a contact are interpreted "'in an ordinary and popular sense as would a [person] of average intelligence and experience.'"  (Richardson v. Pension Plan of Bethlehem Steel Corp., 112 F.3d 982, 985 (9th Cir. 1997), quoting Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1441 (9th Cir. 1990).).)  Under the parol evidence rule, a court looks to, and enforces, the plain language of a contract and does not look to extrinsic evidence to interpret the terms of an unambiguous written instrument. (United States v. Nunez, 223 F.3d 956, 958 (9th Cir. 2000); Wilson Arlington Co. v. Prudential Ins. Co. of Am., 912 F.2d 366, 370 (9th Cir. 1990).)

The terms of the Severance Agreement and General Release are clear and unambiguous.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    Pursuant to the contract, plaintiff received her salary, health care coverage and 401(k)

2    contribution benefits for an additional three months, while all other employee benefits were

3    terminated as of August 28, 2001. (CF 91 to CF 92.) In exchange for the additional benefits

4    provided, plaintiff voluntarily released "Providian..., its parent, subsidiaries and affiliates, and

5    their officers, directors, employees and *agents, and all others*, of and from any and all claims,

6    liabilities, demands, causes of action...known or unknown...arising out of or any way related to

7    agreements, events, acts or conduct at any time prior to and including the date of this release,

8    including but not limited to claims or demands directly or indirectly arising out of or any way

9    connected with my *employment, benefits*...or claims under...any other federal, state, or local

10   statute." (CF 094, emphasis added.)

11           Plaintiff's present action for long term disability benefits falls within the language of the

12   release and is therefore barred by the explicit terms of the Release and Settlement Agreement.

13   (See, Smart v. The Gillette Co., supra, 70 F.3d 173, Brae Transportation v. Coopers & Lybrand,

14   790 F.2d 1439 (9th Cir. 1986).) In Smart v. The Gillette Co., supra, 70 F.3d 173, plaintiff entered

15   into a severance agreement with her employer, Gillette, whereby she agreed to release all federal

16   and state claims against Gillette, in exchange for severance pay and other assorted benefits.

17   Plaintiff later applied for long-term disability benefits, claiming she had become totally disabled

18   during the severance period. After the claim was denied, she filed suit against the Gillette Long

19   Term Disability Plan for wrongful denial of benefits in violation of ERISA. The district court

20   dismissed plaintiff's complaint, finding she had waived her right to benefits when she entered into

21   the severance agreement which effectively extinguished her claim because it terminated her right

22   to further participation in the plan. The 1st Circuit upheld the dismissal, finding that once plaintiff

23   was no longer a participant, she no longer possessed a substantive right protected by ERISA. The

24   court also held plaintiff had knowingly waived her rights under the Gillette Long Term Disability

25   Plan by signing a severance agreement wherein she release Gillette from "any and all claims,

26   charges, complaints, or causes of action ...including but not limited to...claims arising from

27   alleged violations of ... any ... local, state, or federal law, regulation or policy or any other claim

28   relating to or arising out of your employment with [Gillette] or termination thereof..." (Smart,

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RCI/381140 1/KCC                                    - 11 -        LIBERTY LIFE ASSURANCE COMPANY OF
                                                                 BOSTON'S MOTION TO DISMISS – CASE NO
                                                                 C 05-3190 TEH

1 | supra, 70 F.3d at 178-179.)

2 | In another factually similar case, Piehl v. Metro. Life Ins. Co., 2005 U.S. Dist. LEXIS

3 | 4619 (D.C. Ore. 2005) the court granted summary judgment in favor of defendants, the claims

4 | administrator and plan, in connection with the employee's complaint demanding long term

5 | disability benefits under ERISA. On February 20,1999, the claimant employee alleged he

6 | became disabled and did not return to work because of a bipolar disorder. The employee signed a

7 | settlement agreement and release with the employer. He later presented a claim for short-term

8 | disability and long-term disability to the administrator. Two years after it initially denied the

9 | employee's claim, the administrator upheld the denial because it was barred by the settlement

10 | agreement and because it was not timely filed. The court held the employee could not seek

11 | recovery for disability benefits from the claims administrator because they were released in his

12 | settlement with the employer. The employee agreed to relinquish all compensation and make no

13 | claims for ERISA benefits against the employer in exchange for limited participation in certain

14 | company-sponsored benefit plans. The long and short-term disability plans were not among the

15 | benefits expressly preserved or waived, though the employee did waive his right to bring an

16 | ERISA claim against the employer. The court held that although the employee did not bring its

17 | ERISA claim against the employer, he was seeking an employer benefit explicitly waived in the

18 | settlement agreement.

19 | **2.  Plaintiff Knowingly and Voluntarily Waived Her Claim for Disability Benefits**

20 | Plaintiff knowingly and voluntarily waived her disability benefits claims in the Severance

21 | Agreement and cannot prevail in this action. To determine whether there has been a knowing and

22 | voluntary relinquishment of employee benefits claims, courts examine the totality of the

23 | circumstances, including (1) the plaintiff's education, business experience and sophistication, (2)

24 | the amount of time the plaintiff had to review the agreement, (3) whether the plaintiff was

25 | represented by counsel, (4) clarity of the agreement, (5) whether and what kind of consideration

26 | was given and (6) the plaintiff's role in negotiating the agreement. (Finz v. Schlesinger, 957 F.2d

27 | 78, 82 (2nd Cir. 1992); Smart v Gillette, 70 F.3d 173, 181 , fn. 3 (1st Cir. 1995); Leavitt v.

28 |

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON'S MOTION TO DISMISS – CASE NO C 05-3190 TEH

1   Northwestern Bell Tel. Co., 921 F.2d 160, 162 (8th Cir. 1990).)

2        Under these factors set forth above, plaintiff knowingly and intentionally released her

3   claim for disability benefits when she signed the Severance Agreement and Release. Plaintiff is

4   college educated (with some post graduate courses and certificates) and commercially

5   sophisticated as evidenced by her position as Director of Data Services at Providian and her past

6   employment history. (CF 110, 821.) Even plaintiff acknowledges in her complaint that she was a

7   very capable and successful business woman, working her way up into a Director level position at

8   several companies. (Complaint p. 16, ¶ 54.) Plaintiff had 21 days to consider the release and 7

9   days after signing to revoke if she so desired. (CF 94.)

10       Although plaintiff was not represented by counsel (or at least the release does not indicate

11  that she was), she was advised to consult with an attorney prior to signing the release. (CF 94.)

12  The Severance Agreement and release is clear; the only benefits she would continue to receive

13  during her severance period were specifically enumerated in the Severance Agreement. (CF 91 to

14  92.) Plaintiff acknowledged above her signature that "she had carefully reviewed and considered

15  the severance agreement; that she understood the terms of the agreement and that she voluntarily

16  agreed to them. (CF 93.)

17       Plaintiff also received substantial consideration for the execution of the release – three

18  months of additional salary (worth approximately $33,750), health care coverage, and 401(k)

19  employer contributions, as well as, and outside placement consultant services up to three months.

20  (CF 91 to 92.) As the Fifth Circuit has stated:

21           "Plaintiffs were given a choice: to accept severance benefits at the
             time of their termination and sign a Release, or to wait and dispute
22           their eligibility under the 1995 plan. Without exception, plaintiffs
             chose to take the severance benefits when offered at the time of
23           their termination. They cannot complain now that the severance
             package they freely accepted in lieu of protracted litigation over
24           plan benefits is inadequate consideration." (Chaplin v. Nations
             Credit Corp., 307 F.3d 368, 375 (5th Cir. 2002); see also, Martino-
25           Catt, 317 F.Supp.2d at 924.)

26       Plaintiff also apparently negotiated the paid leave of absence on August 28, 2001 as part

27  of a settlement of a sexual harassment claim against a co-worker. (CF 466.)

28       The totality of the circumstances, here, demonstrates plaintiff knowingly and voluntarily

RC1/381140 1/KCC                        - 13 -        LIBERTY LIFE ASSURANCE COMPANY OF
                                                      BOSTON'S MOTION TO DISMISS – CASE NO
                                                      C 05-3190 TEH

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1  waived her claim for long term disability benefits under the Providian Plan. Accordingly, her

2  present action is barred and Liberty's motion to dismiss must be granted.

3  ## IV. CONCLUSION

4  Plaintiff cannot state a claim against Liberty upon which any relief can be granted. Her

5  participation in the Providian long term disability plan, insured by Liberty, ended on August 28,

6  2001 when her employment was terminated. Because plaintiff's claim for long term disability

7  benefits is based on an alleged Disability (defined as the inability to work) that began after

8  August 28, 2001, there was no coverage for her claim and she no longer possessed a substantive

9  right protected by ERISA. Moreover, even if plaintiff's claim had been covered, her claims fail

10  because she voluntarily and knowingly released any rights or claims for disability benefits when

11  she entered into the Severance Agreement and Release with Providian. Accordingly, Liberty's

12  motion to dismiss the complaint should be granted by the Court.

13

Dated: September 16, 2005                    ROPERS, MAJESKI, KOHN & BENTLEY

14

15
                                             By: _Kathryn C. Curry_____
16                                               PAMELA E. COGAN
                                                 KATHRYN C. CURRY
17                                               ERIN A. CORNELL
                                                 Attorneys for Defendant
18                                               LIBERTY LIFE ASSURANCE
                                                 COMPANY OF BOSTON
19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

# SEVERANCE AGREEMENT AND RELEASE

# EXHIBIT 1 TO ANITA CARR'S COMPLAINT

## Pages CF 91 to CF 97

Providian Financial Corporation
201 Mission Street
San Francisco, CA 94105

**PROVIDIAN**
*Financial*

(415) 543-0404

August 28, 2001

BY HAND DELIVERY

Anita Carr
████████████████
Dublin, California

RECEIVED

JAN 1 9 2005

APPEALS-0096

    Re:    Notice of Eligibility
            Providian Financial Corporation Severance Pay Plan

Dear Anita:

    This letter is your Notice of Eligibility in accordance with Section 2.7 of the **Providian Financial Corporation Severance Pay Plan** (the "Plan"). A copy of the Plan is enclosed with this letter. In order to become eligible for the benefits described in this Notice of Eligibility, you must execute and return a copy of (i) this letter, (ii) the General Release, attached to this letter as Exhibit A, and (iii) the Acknowledgement of Confidentiality Agreement, attached to this letter as Exhibit B. All provisions of this letter are subject to and governed by the terms of the Plan.

    1.    Covered Employee. In accordance with Section 2.3 of the Plan you are a Covered Employee under the Plan, and your **Eligible Termination Date** under Section 2.5 of the Plan is August 28, 2001.

    2.    Actual Separation Date: In consideration of your executing this Agreement and accompanying Exhibits, the Company will maintain your status as an active employee until November 28, 2001 ("Separation Date"), during which time you will continue to receive your regular base salary, your health care coverage, and continue to vest in the employer match and retirement contribution portions of your 401(k) Plan, as detailed fully in the paragraphs below. Thus, if you accept the terms of this agreement, you will be on a leave of absence until your Separation Date on November 28, 2001. If you do not accept these terms and execute the documents referenced herein, your Separation Date will be August 28, 2001.

    3.    Severance Benefit. Provided all other requirements under the Plan and this Notice of Eligibility are met, your Severance Benefit under Section 4.1 of the Plan shall be as follows:

            (a)    Providian Bancorp Services (the "Company") will continue to pay your regular base salary, in accordance with its regular payroll periods, for three (3) months following your Eligible Termination Date, subject to standard payroll deductions and withholdings. These payments are contingent upon the Company's receipt of this Agreement, the General Release (Exhibit A), and the Acknowledgement of Confidentiality Agreement (Exhibit B). Payment of these amounts will begin after the "Effective Date" (see paragraph 2 of the General Release (Exhibit A)).

CF000091

Ms. Anita Carr
August 28, 2001
Page 2 of 3

Thus, until the Effective Date, none of these benefits can be made available to you;

(b)    the Company will continue to pay the costs of your current health care coverage for a period of three (3) months following your Eligible Termination Date, in accordance with the same terms and conditions as you are currently entitled;

(c)    the Company will pay for the services of an outplacement consultant for you from a firm of the Company's choosing, for a period of up to three (3) months, at a maximum cost to be set by the Company; and

4.    **Other Compensation or Benefits.** You acknowledge that, except as expressly provided in this Notice of Eligibility, you will not receive any additional compensation, separation payments or benefits from the Company.

5.    **General Release.** In exchange for the payments and other benefits under this Notice of Eligibility to which you would not otherwise be entitled, you agree to execute and be bound by the General Release attached hereto as Exhibit A.

6.    **Proprietary Information Obligations.** In exchange for the payments and other benefits under this Notice of Eligibility to which you would not otherwise be entitled, you agree to execute and be bound by the Acknowledgement of Confidentiality Agreement attached hereto as Exhibit B, and shall continue to be obligated by the Confidentiality Agreement you previously executed. You further agree to notify the Company in writing within two (2) days of accepting new full or part-time employment during the one-year period following your Eligible Termination Date. Such notice will include the name and address of your new employer, your title, and the nature of your responsibilities. It should be addressed to: A. W. Wiggenhorn, Human Resources, Providian Financial Corporation, 201 Mission Street, San Francisco, CA 94105.

7.    **Confidentiality:** The existence of and provisions of this Notice of Eligibility shall be held in strictest confidence by you and shall not be publicized or disclosed in any manner whatsoever, including but not limited to any reference to its existence, meaning, importance, value or comparative value; provided, however, you may disclose this Notice of Eligibility to your spouse or domestic partner (if any), attorney, accountant, tax preparer, and financial advisor, and you may also disclose this Notice of Eligibility insofar as such disclosure is required by law. **You specifically agree that your obligation to maintain the confidentiality of this Notice of Eligibility is a material term of this Notice of Eligibility without which the Company would not have entered into this Notice of Eligibility. Therefore, you agree that any violation of the terms of this provision will obligate you to refund the value of all benefits granted to you pursuant to this Notice of Eligibility.** Nothing in this paragraph shall prejudice the Company's ability to recover damages for the breach of any other provision of this Notice of Eligibility.

8.    **Nondisparagement.** You hereby agree not to engage in any conduct or communication, either personally or through agents, whether verbal or written, which is injurious to the Company's good business reputation.

9.    **Miscellaneous.** This Notice of Eligibility, including Exhibits A and B, constitutes the complete, final and exclusive embodiment of the entire agreement between you and the Company with regard to its subject matter. It is entered into without reliance on any

DOCSSF1:540652.1

CF000092

Ms. Anita Carr
August 28, 2001
Page 3 of 3

promise or representation, written or oral, other than those expressly contained herein, and it
supersedes any other such promises, warranties or representations. This Notice of Eligibility may
not be modified or amended except in a writing signed by both you and a duly authorized officer
of the Company. This Notice of Eligibility shall be binding upon you and the Company and the
respective heirs, personal representatives, successors and assigns of you and the Company, but
neither this Notice of Eligibility nor any rights hereunder shall be assignable by you without the
written consent of the Company. If any provision of this Notice of Eligibility is held to be
invalid, void, or unenforceable, the remaining provisions shall remain in full force and effect. In
the event that a dispute arises concerning the interpretation or enforcement of this Notice of
Eligibility, or any other related matter, you agree that any such dispute shall be submitted to
binding arbitration before the San Francisco office of JAMS or its successor, under the rules of
JAMS then in effect for resolution of contract disputes. This agreement shall be construed
according to the laws of the State of California.

    If this Notice of Eligibility is acceptable to you, please sign and date both the enclosed
copy of this Notice of Eligibility in the space provided, the enclosed General Release (Exhibit A)
and the Acknowledgment of Confidentiality Agreement (Exhibit B), both of which are part of
this Notice of Eligibility, and return all three documents to me.

    I wish you luck in your future endeavors.

Sincerely,
PROVIDIAN FINANCIAL CORPORATION

By: _____
    A. W. Wiggenhorn

Exhibit A – General Release
Exhibit B – Acknowledgment of Confidentiality Agreement


    By my signature below, I acknowledge that I have carefully reviewed and considered this
Notice of Eligibility; that I understand the terms of the Notice of Eligibility; and that I voluntarily
agree to them.

_____          _____
Anita Carr                                Date

CF000093

## EXHIBIT A

### GENERAL RELEASE

1.     I hereby release, acquit and forever discharge Providian Bancorp Services (the "Company"), its parent, subsidiaries and affiliates, and their officers, directors, employees and agents, and all others, of and from any and all claims, liabilities, demands, causes of action, costs, expenses, or otherwise, known and unknown, suspected and unsuspected, disclosed and undisclosed, arising out of or in any way related to agreements, events, acts or conduct at any time prior to and including the date of this release, including but not limited to all claims or demands directly or indirectly arising out of or in any way connected with my employment, benefits, and/or compensation with the Company, or the termination of my employment, including but not limited to common law claims and/or claims under TitleVII of the Civil Rights Act of 1964, the Federal Age Discrimination in Employment Act of 1967, as amended ("ADEA"), the Americans with Disabilities Act, the California Fair Employment and Housing Act, and/or any other federal, state, or local statute.

2.     I acknowledge that I am knowingly and voluntarily waiving and releasing any rights I may have under the ADEA. I also acknowledge that the consideration given for the waiver and release in the preceding paragraph hereof is in addition to anything of value to which I was already entitled. I acknowledge that this Agreement and General Release is written in a manner calculated to be understood by me. I further acknowledge that I have been advised by this writing, as required by the ADEA and the Older Workers Benefit Protection Act, that: (a) my waiver and release do not apply to any rights or claims that may arise after the execution of this release; (b) I should consult with an attorney prior to executing this release; (c) I have twenty-one (21) days to consider this release (although I may choose to voluntarily execute this release earlier); (d) I have seven (7) days following the execution of this release to revoke the release; (e) this release shall not be effective until the revocation period has expired, *i.e.*, as of the eighth day after this release is executed by me (the "Effective Date"); and (f) at the time I was provided with a copy of this Release and the Agreement to which it is attached.

3.     In giving this release, which includes claims which may be unknown to me at present, I acknowledge that I have read and understand Section 1542 of the California Civil Code which reads as follows: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor." I hereby expressly waive and relinquish all rights and benefits under that section.

_____                    _____
Anita Carr                                         Date

CF000094

**EXHIBIT B**

Acknowledgement of
Confidentiality Agreement



As an employee of the Company, I signed the Confidentiality Agreement (a copy of which has been given to me), and I have now reread that Confidentiality Agreement. I acknowledge that I have acquired knowledge of or had access to confidential and proprietary information of the Company during my employment, including, but not limited to, the information in my files and notebooks and those items identified below.

I understand that the items listed below are not an exhaustive list of all the confidential and proprietary information to which I have been exposed. Rather, they are intended as examples of the types of information covered by the Confidentiality Agreement. I understand that the listing of certain areas of confidential and proprietary information does not mean that I am free to use or disclose other unlisted confidential or proprietary information.

### LIST OF EXAMPLES
### OF CONFIDENTIAL AND/OR
### PROPRIETARY INFORMATION

I acknowledge that I have acquired knowledge of or acquired access to the following types of confidential information of the Company, among other such information:

- Business results that have not been publicly disclosed in annual or quarterly shareholder reports, profitability, yields, charge-off, delinquency, cost of funds, expenses, response rates, booking rates, proof rates, and portfolio, product and segment performance data.

- Strategic plans, business forecasts, operating plans, situation analyses, and the economic and other models used for planning and product approval purposes.

- Product and product feature specifications, and actual and proposed product designs, except to the extent not disclosed in materials sent to customers.

- Credit criteria, policy, predictive variables, scoring models, performance data and analyses of the predictive value of information bearing on creditworthiness.

- Targeting models, predictive variables, results and analyses. *n/a*

- Operational strategies, methods, facilities and systems, including techniques, designs and procedures for lead generation, lead conversation, customer service, collections and asset recovery.

DOCSSF1:540652.1

CF000095

- Database management techniques and information contained in databases maintained by or for the Company.

- Research and development projects, including opportunities under consideration, and methods, plans and strategies for research and development.

- Sales and marketing information, including pricing information, customer lists, databases, analyses of customer characteristics, customer surveys and marketing plans.

- Vendor lists and terms of agreements or proposed agreements with vendors.

- Electronic files, including, but not limited to, source code, object code, tapes, disks, diskettes, and any other on-line documentation.

- Patent applications and patent disclosures in the fields of _____ N/A _____
  _____

- Personnel lists and information regarding skills, compensation and responsibilities of personnel.

- Other (please specify):

    I acknowledge that I have had access to the types of information described above and on the attached supplemental list. I am fully aware of the critical important of preserving the confidentiality of the Company's business information and activities. I have actively participated in efforts to protect the confidentiality of the Company's proprietary information.

    I do not possess, nor have I failed to return, any files, drawings, blueprints, notes, notebooks, memoranda, specifications, computer tapes of disks, customer producer, sales, marketing, product, collection and/or financial information, source code, object code or other documents or electronic files containing or disclosing any of the Company's trade secrets or proprietary information or confidential information, or copies of any of these items, or other materials, tools, equipment, or other property belonging to the Company.

CF000096

I have complied with, and I will continue to comply with, all of the terms of the Confidentiality Agreement.  In compliance with such, I will preserve as confidential all proprietary information pertaining to the Company and I will refrain from using or disclosing the Company's confidential or proprietary information.

I HAVE READ THE ABOVE AND UNDERSTAND ITS CONTENTS.

Employee signature: _____   Date: _____

Exit interview conducted by: _____   Date: 8/28/01

_____   Date:_____

RECEIVED

JAN 19 2005

APPEALS-0096

DOCSSF1:540652.1

CF000097