1  PAMELA E. COGAN (SBN 105089)
   pcogan@ropers.com
2  KATHRYN C. CURRY (SBN 157099)
   kcurry@ropers.com
3  ERIN A. CORNELL (SBN 227135)
   ecornell@ropers.com
4  ROPERS, MAJESKI, KOHN & BENTLEY
   1001 Marshall Street
5  Redwood City, CA 94063
   Telephone:  (650) 364-8200
6  Facsimile:  (650) 780-1701

7  Attorneys for Defendant
   LIBERTY LIFE ASSURANCE COMPANY OF
8  BOSTON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANITA CARR,<br><br>Plaintiff,<br><br>v.<br><br>LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, a Massachusetts Corporation, and PROVIDIAN BANCORP SERVICES, a domestic corporation, and PROVIDIAN FINANCIAL HEALTH PLAN, an employee benefits plan,<br><br>Defendants. | CASE NO. C 05-3190 TEH<br><br>**DEFENDANT LIBERTY LIFE ASSURANCE COMPANY OF BOSTON'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL ATTENDANCE AT BINDING ARBITRATION**<br><br>Date:   April 17, 2006<br>Time:   10:00 a.m.<br>Judge:  Hon. Thelton E. Henderson |

## I. INTRODUCTION

Plaintiff's Motion to Compel Defendant Liberty Life Assurance Company of Boston ("Liberty") to Attend Arbitration must be denied because Liberty is not bound by the terms of the Employment Agreement that plaintiff signed at the time her employment with Providian commenced. Liberty is entitled to rely on the Release Agreement as an affirmative defense to plaintiff's claims for long term disability benefits and at the same time not be subject to the arbitration provision contained in the Employment Agreement because plaintiff knowingly and voluntarily gave up her right to bring this current action but Liberty did not knowingly and

voluntarily give up its right to have plaintiff's claims against Liberty decided by a court. Additionally, plaintiff's stated intention to conduct sweeping discovery in connection with arbitration of the merits of the claim determination will not serve judicial economy and is contrary to the very purpose of ERISA. Plaintiff's claims against Liberty must, therefore, remain in the jurisdiction of this court.

## II. STATEMENT OF FACTS

### A. PLAINTIFF'S EMPLOYMENT WITH PROVIDIAN BANCORP SERVICES

On October 19, 1998, plaintiff began her employment with Providian Bancorp Services ("Providian") by signing an Employment Agreement ("Agreement"). (Complaint ¶1 and 3; Exhibit "1" to Complaint, p. CF 101 to CF 103.)[1] The Agreement provided for binding arbitration of:

> "[A]ny dispute or disagreement arising out of or in any way related to this Agreement, your employment with us or the termination of your employment (including, but not limited to, claims of discrimination, harassment, wrongful discharge, breach of contract, tortuous conduct, statutory violations or unpaid wages or benefits), you and the Company agree to submit the dispute or disagreement to binding arbitration before JAMS/Endispute or its successor, pursuant to the United States Arbitration Act." (CF 102 to CF 103, emphasis added.)

Plaintiff's employment with Providian was terminated on August 28, 2001. (CF 91.) On August 28, 2001, plaintiff received a letter notifying her of her eligibility to participate in the Providian Financial Corporation Severance Pay Plan. ("Notice of Eligibility".) (CF 91 to CF 93.) The letter provided in part:

> "This letter is your **Notice of Eligibility** in accordance with Section 2.7 of the **Providian Financial Corporation Severance Plan** (the "Plan"). A copy of the Plan is enclosed with this letter. In order to become eligible for the benefits described in this Notice of Eligibility, you must execute and return a copy of (i) this letter, (ii) the General Release, attached to this letter as Exhibit A, and (iii) the Acknowledgement of Confidentiality Agreement, attached to this letter as Exhibit B." (CF 91.)

Pursuant to the letter, if plaintiff elected to participate in the Providian Severance Pay

---

[1] References herein "CF" refer to the page number of the claim file attached as Exhibit "1" to the Complaint, which was bates labeled CF-001 to CF-1112.

RC1/397523.1/EAC - 2 - DEFENDANT'S OPPOSITION TO MOTION TO COMPEL ATTENDANCE AT ARBITRATION C 05-3190 THE

Plan, she could continue to receive regular base salary, her health care coverage, and continue to vest with matching employer contributions in the 401(k) Plan until November 28, 2001 ("Separation Date") and she was provided the services of an outplacement consultant up to three months. Any and all claims to other employee benefits were expressly waived pursuant to a General Release ("Release") attached to the Notice of Eligibility letter. (CF 92, ¶ 4, 5.) If plaintiff did not accept the terms of the Severance Pay Plan as outlined in the letter, her separation date would be August 28, 2001. (CF 91 ¶ 2.) Plaintiff signed the Notice of Eligibility and the General Release on September 21, 2001. (CF 91, CF 94.)

### B. PLAINTIFF'S CLAIM FOR LONG TERM DISABILITY

On or around November 29, 2001, plaintiff submitted a claim to Liberty for disability income benefits under the Providian Group Disability Income policy. (Complaint, p. 6 ¶ 12.) Because Liberty was unaware that plaintiff had been terminated by Providian on August 28, 2001 and that she had entered into the Severance Agreement and Release, it processed the claim. (CF 1088.)[2] After receiving notification of the claim, Liberty requested plaintiff's treating doctor complete and return an Attending Physician's Statement ("APS"), which was received by Liberty on January 3, 2002. (CF 1099 to CF 1100.)

The APS completed by plaintiff's primary treating physician, Carol L. Lamb, M.D., listed diagnoses of gastroesophageal reflux disease (GERD), hypertension, fibromyalgia and anxiety. (CF 1099 to CF 1100.) Dr. Lamb, however, also indicated on the APS that plaintiff had not been advised to cease working and <u>she had no work restrictions</u> and <u>no limitations of functional capacity and was capable of performing work</u>. (CF 1099 to CF 1100.)

On January 22, 2002, plaintiff confirmed during a telephone conversation with Liberty that <u>none of her doctors had told her to stop working or that she was disabled</u>. (CF-1089 to CF 1090.) That day, Liberty sent plaintiff a letter denying her claim for disability benefits. (Complaint, ¶ 12, CF-1097 to CF 1098.) Plaintiff appealed the denial on or about March 15, 2002. (Complaint, ¶ 13, CF-1094.) After requesting, receiving and reviewing records from her various medical providers, Liberty upheld its initial denial on April 29, 2002. (CF-0960 to CF

---

[2] Liberty did not receive a copy of the Severance Agreement until January 19, 2005. (CF 91, Liberty date stamp.)

961.)

On July 28, 2003, almost two years after the termination of her employment, and 15 months after Liberty had upheld the denial of her claim on appeal, plaintiff submitted another claim to Liberty for benefits under the long term disability plan based on the same date of disability – August 29, 2001.[3] (Complaint, ¶¶ 14, 25.) After conducting an investigation, including obtaining two physician reviews, Liberty denied the claim on or around November 17, 2003. (CF 768.) The denial letter advised plaintiff of her right to file an appeal and that she had 180 days within which to file an appeal. (CF 773.)

On December 14, 2004, more than one year after the denial, plaintiff appealed Liberty's November 17, 2003 decision. (Complaint ¶ 15; CF 465.) On January 28, 2005, , Liberty sent a comprehensive and detailed letter to plaintiff denying her untimely appeal and upholding its denial for her claim for long term disability. (Complaint ¶ 16; CF 21 to CF 28.)

### C. PLAINTIFF FILES SUIT AGAINST LIBERTY AND PROVIDIAN

On August 5, 2005, plaintiff filed this lawsuit against Liberty and Providian seeking enforcement of her rights and recovery of long-term disability benefits under the long-term disability insurance policy issued by Liberty to Providian. (Complaint, pp. 19-20.) The policy issued by Liberty is an "employee benefit plan" as defined in § 1002 of The Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. (Complaint, p. 19:10-14) and plaintiff's claim is governed by ERISA. (Complaint p. 2, ¶ 6.) A copy of Liberty's claim file as it existed as of February 2005 was attached as Exhibit 1 to the complaint.

### III. LEGAL ARGUMENT

Liberty cannot be compelled to attend arbitration of plaintiff's claims against it because it is not bound by the Employment Agreement. Liberty's reliance on the Release as an affirmative defense does not subject it to the arbitration provision in the Employment Agreement. While plaintiff has released her rights to bring her current claims against Liberty by voluntarily entering into the Release and Severance Agreement, Liberty did not voluntarily waive its rights to defend

---

[3] Plaintiff claimed that the earlier claim related only to her short term disability claim. While Liberty disagreed, it nevertheless considered her 2003 claim again.

RC1/397523.1/EAC — - 4 - — DEFENDANT'S OPPOSITION TO MOTION TO COMPEL ATTENDANCE AT ARBITRATION C 05-3190 THE

itself in court based on the Employment Agreement plaintiff signed. Moreover, plaintiff's stated intention to conduct broad discovery to support her case in arbitration goes against the very purpose of ERISA. Instead of being more cost efficient, arbitration would actually require Liberty to expend more time and money in this ERISA action than would be spent if the case is kept in the District Court. Therefore, Liberty is unwilling to consent to participate in the arbitration.

### A. LIBERTY IS NOT BOUND BY THE TERMS OF THE EMPLOYMENT AGREEMENT

Because Liberty is not bound by the terms of the Employment Agreement, it cannot be compelled to attend binding arbitration of plaintiff's claims against it pursuant to the Employment Agreement. While courts have found arbitration agreements to be valid and binding with respect to resolving disputes that arise under ERISA in certain circumstances, those circumstances are not present here.

Plaintiff has not provided any case law to support the proposition that an insurer acting as a claim administrator of an insured ERISA employee welfare benefit plan is bound by an arbitration provision contained in a participant's Employment Agreement between plaintiff and her employer and cases that have enforced provisions to arbitrate ERISA claims are distinguishable. (see, e.g., Chappel v. Laboratory Corp. of Am., 232 F.3d 719 (9th Cir. 2000) [Binding arbitration provision in the Plan was enforceable because it was part of claimant's remedies if a claim was denied and was a required procedure to exhaust administrative remedies.]; Bird v. Shearson Lehman/American Express, Inc., 926 F.2d 116 (2d Cir. 1991) [Arbitration provision in an investment agreement signed by plaintiff was enforceable against plaintiff.]; Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., et al, 7 F.3d 1110 (3d Cir. 1993) [Arbitration provision in Plan itself was enforceable.]; Graphic Comm. Union v. GCIU-Employer Retirement Benefit Plan, 917 F.2d 1184 (9th Cir. 1990) [Arbitration was part of the Plan's internal claims procedure. The court distinguished claims brought under the employee benefit plan versus those brought under ERISA and concluded here that plaintiff's claims arose under the plan, so the arbitration provision was enforceable and did not violate ERISA.])

RC1/397523.1/EAC - 5 - DEFENDANT'S OPPOSITION TO MOTION TO COMPEL ATTENDANCE AT ARBITRATION C 05-3190 THE

1 Accordingly, Liberty is not bound by plaintiff's Employment Agreement, including the binding
2 arbitration provision.

3 Plaintiff's reliance on <u>Comer v. Micor, Inc., et al</u>, 436 F.3d 1098 (9th Cir. 2006), is
4 misplaced. <u>Comer</u> does not support plaintiff's contention that Liberty, a non-signatory, is bound
5 by the Employment Agreement. It merely provides that a non-signatory <u>may</u> be bound, under
6 certain circumstances, but the general rule is that non-signatories to an arbitration agreement are
7 not bound by the agreement and cannot be compelled to arbitrate. (<u>Comer</u>, supra, 436 F.3d at
8 1103.) Plaintiff's assertion that Liberty is an agent of Providian does not establish that it must
9 attend binding arbitration pursuant to the Employment Agreement. The Providian Employment
10 Agreement's arbitration agreement does not state that it is intended to apply to the employer's
11 "agents." Moreover, in <u>Comer</u>, the plaintiff, in an action against an ERISA plan, argued he was
12 <u>not</u> bound by an arbitration provision contained in an investment management agreement between
13 the investment company and the plan trustees <u>and the court agreed</u>. Similarly here, the arbitration
14 provision is contained in plaintiff's Employment Agreement, not an ERISA plan, and Liberty is
15 not a party to the Employment Agreement.

16 In <u>Letizia v. Prudential Bache Securities, Inc.</u> 802 F.2d 1185 (9th Cir. 1986), defendants, a
17 securities dealer and two of its employees, brought a motion to compel arbitration of plaintiff's
18 securities violations claims based on a Customer Agreement plaintiff signed when he opened his
19 account. Plaintiff argued the arbitration clause was unenforceable against the employee
20 defendants who were non-signatories to the Customer Agreement. The Ninth Circuit held that
21 non-signatories <u>may</u> be bound by an arbitration agreement and brokerage firm employees would
22 be bound by the arbitration agreement in these circumstances. In contrast, Liberty is not an
23 employee of Providian.

24 In <u>Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., et al</u>, 7 F.3d 1110 (3d Cir.
25 1993), the Third Circuit found agreements to arbitrate statutory ERISA claims under the Federal
26 Arbitration Act <u>may</u> be enforceable. In <u>Pritzker</u>, however, the arbitration provision was contained
27 in the agreement that was executed between plaintiff, the plan trustee, and defendant brokerage
28 firm as <u>part of a pension plan</u>, not an employment agreement, and the court specifically limited its

holding to the facts of the case, stating that "this opinion should not be read to require arbitration of statutory ERISA claims in all instances." (Pritzker, supra, 7 F.3d at 1112, fn. 1, internal citations omitted.) Likewise, in Bird v. Shearson Lehman/American Express, Inc., 926 F.3d 116 (2d Cir. 1991), the arbitration provision was contained in a Customer Agreement that plaintiff, as Trustee of a profit sharing trust, signed when he opened an account for investment of the assets of the Trust.

In Shearson/American Express v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), the Supreme Court discussed arbitration solely with regards to claims under the Securities Exchange Act and the Racketeering Influenced and Corrupt Organizations Act. Therefore, this case does not pertain to arbitration of ERISA claims.

### B. LIBERTY'S RELIANCE ON THE RELEASE AGREEMENT AS AN AFFIRMATIVE DEFENSE DOES NOT REQUIRE THAT IT ATTEND BINDING ARBITRATION PURSUANT TO THE EMPLOYMENT AGREEMENT

Contrary to plaintiff's assertions, Liberty's reliance on the Release as an affirmative defense to plaintiff's claim for long term disability benefits is not inconsistent with its position that it is not bound by the Employment Agreement's arbitration provision. The arbitration provision in the Employment Agreement provides that for any dispute "arising out of or in any way related to this Agreement your employment with us or the termination of your employment . . . you [plaintiff] and the Company [Providian] agree to submit the dispute or disagreement to binding arbitration." (CF 102 to CF 103, emphasis added.) In the Release, however, plaintiff agreed to "release, acquit and forever discharge Providian Bancorp Services (the "Company"), its parent, subsidiaries and affiliates, and their officers, directors, employees and agents, and all others..." (CF 94, emphasis added.)

Additionally, at the time plaintiff signed the Release, she was aware of her rights under the Providian Bancorp Plan. Indeed, she claims she became disabled while she was still working at Providian, before she signed the Separation and Release Agreement. By contrast, Liberty did not knowingly and voluntarily give up its right to judicial review by a court of her ERISA action alleging her long term disability benefits claim was wrongly denied. Liberty will be unfairly deprived of rights it did not knowingly and voluntarily waive.

Plaintiff is college educated and commercially sophisticated as demonstrated by her position as Director of Data Services at Providian and her past employment history. (CF-110, CF-821.) Plaintiff had twenty-one days to consider the Release and seven days after signing to revoke if she so desired. Plaintiff was advised to consult with an attorney prior to signing the Release. (CF-94.) The Severance Agreement and Release is clear – the only benefits plaintiff would continue to receive during her severance period were specifically enumerated in the Severance Agreement. (CF-91 to CF-92.) Plaintiff acknowledged above her signature that she had "carefully reviewed and considered this Notice of Eligibility; that [she] understood the terms of the Notice of Eligibility; and that [she] voluntarily agreed to them." (CF-93.)

Plaintiff also received substantial consideration for the execution of the release – three months of additional salary (worth approximately $33,750), health care coverage, and 401(k) employer contributions, as well as outside placement consultant services for up to three months. (CF-91 to CF-92.) As the Fifth Circuit has stated:

> "Plaintiffs were given a choice: to accept severance benefits at the time of their termination and sign a Release, or to wait and dispute their eligibility under the 1995 plan. Without exception, plaintiffs chose to take the severance benefits when offered at the time of their termination. They cannot complain now that the severance package they freely accepted in lieu of protracted litigation over plan benefits is inadequate consideration." (Chaplin v. Nations Credit Corp., 307 F.3d 368, 375 (5th Cir. 2002); see also, Martino-Catt, 317 F.Supp.2d 914, 924 (S.D. Iowa 2004).)

Accordingly, the totality of the circumstances here demonstrates plaintiff knowingly and voluntarily waived her claim for long term disability benefits under the Providian Plan. Liberty, even though not a signatory to the Release, is a released party under the agreement she signed and has the right to enforce its terms by raising the release as a defense to plaintiff's present action. Thus, contrary to plaintiff's argument, Liberty has the right to enforce the Release even though it is not bound by the Employment Agreement's arbitration provision.

C. **BINDING ARBITRATION OF PLAINTIFF'S CLAIMS AGAINST LIBERTY WILL NOT BE MORE EFFICIENT AND COST EFFECTIVE THAN LITIGATION**

"A primary goal of ERISA is to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously." (Taft v. Equitable Life Assurance Soc'y,

1  9 F.3d 1469, 1472 (9th Cir. 1993); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987); Snow
2  v. Standard Life Ins. Co., 87 F.3d 327, 330 (9th Cir. 1996), overruled on other grounds.)
3  Plaintiff's attorney, Steven Krafchick, has indicated he will seek to depose Liberty claims
4  handlers and doctors that reviewed the claim, that will involve out of state travel, and will
5  propound other broad discovery as part of his case before the arbitrator. (Decl. of Pamela E.
6  Cogan, ¶ 3.) Thus, by compelling Liberty's attendance at arbitration, Liberty will be exposed to
7  additional expense it would not otherwise encounter if the matter remains with the District Court.
8  As the District Court explained in Palmer v. University Medical Group, 973 F.Supp. 1179 (D. Or.
9  1997), permitting discovery to demonstrate the motives of the decision maker would
10 exponentially increase both the complexity and the cost of ERISA litigation in contravention of
11 the spirit of that statute. (Id. at 1188.)

12 Moreover, it is unclear from plaintiff's papers whether she intends that the case be
13 disposed of solely through binding arbitration or whether she intends to re-litigate the issues later
14 in court. While initially stating that she has to "litigate her long term disability claim in the
15 arbitration forum without any chance of appeal of the arbitrator's decision," (Plaintiff's Motion to
16 Compel, 8:2-3), she states on the following page that she envisions the arbitrator fully developing
17 the case and the District Court becoming involved at a later date. (Plaintiff's Motion to Compel,
18 9:7-10.) Due to the uncertainty of expense that will be generated if the matter is sent to binding
19 arbitration, combined with the possibility of further litigation cost and court resources if the
20 matter were re-litigated before this court, plaintiff's Motion to Compel Liberty's attendance at
21 binding arbitration will not, as plaintiff argues, avoid inconsistent results or serve judicial
22 economy.

23 **D. PLAINTIFF'S OWN LITIGATION TACTICS HAVE CREATED THE SITUATION SHE NOW CLAIMS IS UNFAIR**
24

25 Any potential unfairness caused by the arbitration of her claims against Providian and the
26 Providian Financial Health Plan (the "Plan") and the litigation of her claims against Liberty is an
27 unfairness of her own making. Defendants Providian and the Plan brought a Motion to Compel
28 plaintiff to arbitrate her claims, and plaintiff did not oppose. Because Liberty was not a party to

defendants' Motion to Compel Arbitration, plaintiff's non-opposition to the Motion only related to Providian and the Plan. Thus, plaintiff voluntarily chose to have this matter in two forums – arbitration and District Court. Only now does she want the matter put back into one forum. Liberty should not be forced to arbitrate her claims as a result. Arbitration would be substantially more expensive than litigation, and Liberty contends the Employment Agreement does not encompass plaintiff's ERISA action against Liberty. If plaintiff is concerned with inconsistent results, she should have opposed the co-defendants' Motion to Compel Arbitration, and can now avoid inconsistent results if the court action proceeds first. Liberty should not be forced to expend more money than it would otherwise as a result of plaintiff's own decisions.

## IV. CONCLUSION

For the foregoing reasons, plaintiff's Motion to Compel Liberty's attendance at binding arbitration pursuant to her Employment Agreement must be denied and plaintiff's claims against Liberty for long term disability benefits must remain in the jurisdiction of this court.

Dated: March 27, 2006

ROPERS, MAJESKI, KOHN & BENTLEY

By: /s/
PAMELA E. COGAN
KATHRYN C. CURRY
ERIN A. CORNELL
Attorneys for Defendant
LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON