IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANITA B. CARR,

                Plaintiff,

v.

LIBERTY LIFE ASSURANCE COMPANY, et al.,

                Defendants.

NO. C05-3190 TEH

ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL ARBITRATION

       This matter came before the Court on Monday, June 12, 2006, on Plaintiff Anita Carr's ("Carr's") motion to compel arbitration against Defendant Liberty Life Assurance Company ("Liberty"). After carefully considering the parties' written and oral arguments and governing law, the Court now GRANTS Carr's motion for the reasons discussed below.

**BACKGROUND**

       This case arises out of Carr's claim that she was improperly denied long-term disability benefits.[1] Carr began working as a database manager for Providian Bancorp Services ("Providian") in October 1998. On October 19, 1998, Carr signed an employment agreement with Providian that provided, among other terms, for binding arbitration of employment disputes:

---

[1] The facts surrounding Carr's disability claim are alleged as follows: Carr claims that she became unable to perform her regular occupation due to disability around the time of her August 28, 2001 termination. The Social Security Administration later determined that Carr became disabled under Social Security rules on August 27, 2001. Carr was seen by a treating physician for varying complaints, including joint aches, fatigue, rash, headaches, and neck pain, between February and August 2001. Carr's treating physician referred her to a rheumatologist. On October 24, 2001, the rheumatologist diagnosed Carr with fibromyalgia, a chronic disorder causing muscle and joint pain as well as fatigue, and Sjogren's syndrome, an autoimmune disease that may also cause fatigue and whose characteristic symptoms are dry eyes and dry mouth.

> BINDING ARBITRATION – ATTORNEYS' FEES. In case of any dispute or disagreement arising out of or in any way related to this Agreement, your employment with us or the termination of your employment (including, but not limited to, claims of discrimination, harassment, wrongful discharge, breach of contract, tortious conduct, statutory violations or unpaid wages or benefits), you and the Company agree to submit the dispute or disagreement to binding arbitration before JAMS/Endispute or its successor, pursuant to the United States Arbitration Act. The rules of JAMS/Endispute then in effect and applicable to the resolution of such disputes or disagreements shall apply, except as set forth in this paragraph. The rules of evidence shall apply to the arbitration, and any decision or award by the arbitrator shall be final, binding, and non-appealable, except in cases of gross fraud or misconduct by the arbitrator. The arbitrator may award the prevailing party his, her or its reasonable attorneys' fees, costs and expenses incurred in the arbitration, consistent with applicable law, including the fees, costs and expenses charged by the arbitrator and JAMS/Endispute. By agreeing to this provision, you acknowledge and agree that you are waiving any right you may have to a jury trial of all disputes or disagreements described above and that you are giving up your rights to discovery and appeal except to the extent that they are specifically provided for above.

Ex.1 to Compl. at CF000102-03. Carr's employment agreement with Providian further contained a "COMPENSATION AND BENEFITS" paragraph that explained that "[d]escriptions of PTO [paid time off], as well as other Company-sponsored benefits and their eligibility requirements, are provided in a benefits booklet that you will receive separately. Please note that the Company may modify your compensation and benefits from time to time as it deems appropriate." *Id.* at CF000101.

Providian terminated Carr's employment on August 28, 2001, but agreed to maintain Carr's status as an active employee, including paying her a regular salary and health and retirement benefits, until a separation date of November 28, 2001. Carr signed a severance agreement to that effect on September 21, 2001. The severance agreement contained a general release provision that applied to all claims against Providian, "its parent, subsidiaries and affiliates, and their officers, directors, employees and agents, and all others . . . arising out of or in any way related to agreements, events, acts or conduct at any time prior to and including the date of this release, including but not limited to all claims or demands directly or indirectly arising out of or in any way connected with [her] employment, benefits, and/or

2

1  compensation with [Providian]." *Id.* at CF000094. However, Carr alleges that she never
2  intended to waive her rights to a long-term disability claim when she signed the release. She
3  further claims that she was unable to negotiate the terms of the severance agreement and
4  general release and would not have signed them had she known she was relinquishing her
5  right to file a disability claim.

6  Carr originally sued two entities: Providian, her former employer, and Liberty, the
7  provider of long-term disability benefits under Providian's group disability insurance policy.
8  Carr added Providian Financial Health Plan ("Plan") as a defendant in her first amended
9  complaint. On November 28, 2005, both Providian and the Plan moved to dismiss all claims
10  against them on grounds that Carr's employment agreement with Providian required Carr to
11  arbitrate such claims. Carr did not oppose that motion, and the Court accordingly dismissed
12  all claims against Providian and the Plan from this case on January 10, 2006.

13  Carr now seeks to compel arbitration of her claims against Liberty so that all of her
14  claims may be resolved in a single forum. However, because Liberty has already filed an
15  answer, Carr cannot voluntarily dismiss this case; instead, under Federal Rule of Civil
16  Procedure 41(a), the case may only be dismissed by stipulation or by order of the Court.
17  After the parties met and conferred, Liberty refused to agree to arbitration.[2] Carr
18  subsequently filed the pending motion to compel arbitration against Liberty. Liberty
19  acknowledges that "courts have found arbitration agreements to be valid and binding with
20  respect to resolving disputes that arise under ERISA in certain circumstances," but the
21  company argues that those circumstances are not present here because Liberty was not a
22  signatory to the contract containing the arbitration agreement. Opp'n at 5.

## DISCUSSION

25  [2]Liberty bases this refusal on its belief that the costs of arbitration would be greater
than the costs of litigation. Carr apparently intends to seek extensive discovery relating to
26  Carr's medical condition and the basis for Liberty's claim determination as part of the
arbitration process. Liberty believes that such discovery would be barred in this Court and
27  that the Court's review of those issues would be limited to the administrative record. The
permissible scope of discovery is not before the Court at this time, but the Court notes this
28  disagreement as the proffered explanation for Liberty's refusal to consent to arbitration.

3

1    This case comes before the Court in a unique procedural posture in that Carr
2 originally chose to file suit in this forum but now wants to move the case to arbitration.
3 Typically, the moving party on a motion to compel is a party seeking a change in forum after
4 being involuntarily brought into court.  Nonetheless, Liberty does not assert that Carr is
5 barred from moving to compel arbitration because she initially chose to litigate her claims in
6 this Court, nor does it appear that such a waiver argument would be persuasive.[3]

7    Turning to the merits of the motion, Carr raises three main arguments, only the third
8 of which has any merit.  First, Carr argues that Liberty cannot attempt to rely on the
9 severance agreement and at the same time assert that it is not bound by the arbitration clause
10 in the employment agreement.  However, Carr specifically agreed in the severance agreement
11 to release claims against Providian and its "affiliates, and their officers, directors, employees
12 and agents, and all others," whereas the arbitration clause in the employment agreement
13 referred only to Carr and Providian and made no mention of affiliates or agents.  *Compare*
14 Ex. 1 to Compl. at CF000094 (general release contained in severance agreement) *with id.* at
15 CF000101-03 (employment agreement).  Consequently, it is not inconsistent for Liberty to
16 attempt to rely on the severance agreement while simultaneously arguing that it is not bound
17 by the employment agreement.

18    Second, Carr argues that it would be fundamentally unfair to force her to both
19 arbitrate and litigate her claims.  As Liberty points out, however, any unfairness that results
20 from having two forums is of Carr's own making.  Carr agreed to arbitrate her claims against
21 Providian and the Plan while her claims against Liberty remained pending before this Court –
22 where they began because Carr initially chose to file suit in this forum.

---

[3]To establish waiver, Liberty would have to show: (1) that Carr knew of her right to arbitrate; (2) that she acted inconsistently with that right; and (3) that Liberty suffered prejudice from Carr's delay in moving to compel arbitration.  *United Computer Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 765 (9th Cir. 2002).  Although the first two prongs appear to be satisfied here, Liberty has made no showing (or even claim) of prejudice, thus failing to satisfy the third prong of the waiver analysis.  *See id.* (finding that substantial litigation costs, including costs on appeal, were insufficient to establish prejudice where the court proceedings never went past the pleadings stage).

4

1   Carr's third argument, however, is persuasive, and it is on this basis that the Court
2 grants Carr's motion.  In general, a party is not bound by an arbitration agreement it did not
3 sign, but a nonsignatory may be bound by an agreement to arbitrate under "ordinary contract
4 and agency principles."  *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101, 1103-04 & n.10 (9th
5 Cir. 2006).  These principles include incorporation by reference, assumption, agency, veil-
6 piercing or alter ego, estoppel, and third-party beneficiary rules.  *Id.* at 1101 (citations
7 omitted).  Here, Carr contends that Liberty was Providian's agent for handling disability
8 claims and that, as such, Liberty is therefore bound by the arbitration clause in the
9 employment agreement between Providian and Carr.  At oral argument, Liberty made clear
10 that it does not contest that it was Providian's agent.

11   Instead, Liberty argues that Carr has not met the standard for binding agents to
12 arbitration agreements signed by their principals.  In *Britton v. Co-op Banking Group*, the
13 Ninth Circuit held that an arbitration clause applies to a nonsignatory agent if the "alleged
14 wrongdoing as agent . . . relate[s] to or arise[s] out of the contract containing the arbitration
15 clause."[4]  4 F.3d 742, 747 (9th Cir. 1993); *see also Pritzker v. Merrill Lynch, Pierce, Fenner*
16 *& Smith, Inc.*, 7 F.3d 1110, 1121 (3d Cir. 1993) ("Because a principal is bound under the
17 terms of a valid arbitration clause, its agents, employees and representatives are also covered

---

[4]Notably, neither Liberty nor Carr cited *Britton* in their papers; instead, the Court uncovered the case in its own research and, on April 10, 2006, ordered the parties to be prepared to discuss the case at oral argument.  During the hearing, both parties conceded that *Britton* set forth the critical question in this case and remains good law.
    The two Ninth Circuit cases cited by Carr are inapposite on the agency question. First, the party seeking to compel arbitration in *Comer* only argued that Comer was bound by the arbitration clauses as a matter of equitable estoppel and as a third-party beneficiary, not as an agent of a signatory.  *Comer*, 436 F.3d at 1101.  Second, in *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185 (9th Cir. 1986), the Ninth Circuit never explicitly applied agency principles and instead determined that the nonsignatories seeking to compel arbitration could do so as third-party beneficiaries: "All of the individual defendants' allegedly wrongful acts related to their handling of Letizia's securities account.  Bache has clearly indicated its intention to protect its employees through its Customer Agreement [which contained an arbitration clause].  We conclude that the arbitration clause is applicable to Kwee and Selbst [the individual defendant-employees]."  *Letizia*, 802 F.2d at 1188; *see also Britton*, 4 F.3d at 745-48 (considering, as two separate questions, whether the parties to a contract intended to benefit a third party and whether a nonsignatory agent may invoke the right to arbitrate contained in a contract signed by the agent's principal).  Here, by contrast, Carr has presented no evidence that Providian clearly indicated its intention to protect third-party providers of employee benefits under the arbitration clause.

United States District Court
For the Northern District of California

under the terms of such agreements."). In *Britton*, the Ninth Circuit concluded that the nonsignatory agent could not invoke the arbitration agreement in a sales contract between plaintiffs and the agent's principal because the "sum and substance of [the allegations against the agent] are that he in some way attempted to defraud the investors into not pursuing their law suits against the persons who originally sold the securities under the contract. These acts are subsequent, independent acts of fraud, unrelated to any provision or interpretation of the contract." *Britton*, 4 F.3d at 748.

In this case, by contrast, the alleged acts of wrongdoing are not "independent acts" that are "unrelated to any provision or interpretation of the contract." *Id.* As Liberty argued at the hearing, Liberty's potential liability may arise out of the long-term disability plan at issue in this case; this potential additional basis for liability, however, does not alter the inescapable conclusion that the company's alleged wrongdoing also "relate[s] to or arise[s] out of" Carr's employment agreement with Providian. *Id.* at 747. Carr alleges that Liberty is liable for failing to pay long-term disability benefits, which was a term of Carr's employment. More significantly, Carr's employment agreement with Providian contains a "compensation and benefits" clause, and Liberty's potential liability to Carr thus relates to or arises out of that agreement. Under the test set forth by the Ninth Circuit in *Britton*, Liberty is therefore bound by the arbitration clause in Carr's employment agreement as an agent of Providian.

**CONCLUSION**

In sum, although parties are not generally bound by arbitration clauses contained in contracts they did not sign, a nonsignatory may be bound under such a clause according to "ordinary contract and agency principles." *Comer*, 436 F.3d at 1104 n.10. The Ninth Circuit discussed one such principle in *Britton*, which held that the relevant question in determining whether a nonsignatory agent is bound by an arbitration clause is whether any of the agent's alleged wrongdoing "relate[s] to or arise[s] out of the contract containing the arbitration clause." 4 F.3d at 747. Because Liberty concedes that it was Providian's agent for purposes

6

of providing long-term disability benefits to Providian employees, and because Liberty's alleged wrongdoing stems from the provision of such benefits under the employment agreement's compensation and benefits clause, the Court finds the *Britton* test to be satisfied here. Accordingly, with good cause appearing, the Court hereby GRANTS Carr's motion to compel arbitration of her claims against Liberty. This ruling resolves all issues remaining before the Court in this case, and the Clerk shall therefore close the file.

**IT IS SO ORDERED.**

Dated:   06/22/06

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

United States District Court
For the Northern District of California