1 | *Policy and Liberty Mutual Insurance and Liberty Life Insurance Co. of Boston, No C-05-*
2 | *2716SC, 2008 U.S. Dist. LEXIS 4295 (DC Calif, Northern District).* The regulations set out
3 | the minimum procedural requirements that Liberty must satisfy to meet their obligations under
4 | ERISA to Ms. Carr. The Department of Labor has confirmed that the regulations set out only
5 | minimum requirements:
6 |
7 | After due consideration of the issues raised by the written comments and oral
8 | testimony, the Department has modified the scope of the proposal [for the new
9 | regulations], refined its requirements as to minimum procedural standards for the
resolution of benefit claim disputes, and is now publishing in this notice, in final
10 | form, regulation 2560.503-1, establishing new minimum procedural requirements
for benefit claims under employee benefit plans.
11 |
12 | Federal Register, Vol. 65, No. 225, 65 FR 70426 (November 21, 2001). The regulations took
13 | effect on January 1, 2001 governing all claims from that date forward. Therefore the most
14 | current set of regulations are the regulations governing this claim. 29 CFR 2560.503-1(a)-
15 | (m). We have attached a copy of these regulations for the Court's reference.
16 |
17 | The regulations require that the ERISA fiduciary, Liberty, provide the following
18 | information to Ms. Carr, the claimant, with respect to the adverse benefit decisions on both
19 | her short term and long term disability claims:
20 |
21 | (3) A statement that the claimant is entitled to receive, upon request and free of
charge, reasonable access to, and copies of, all documents, records and other
22 | information relevant to the claimant's claim for benefits. Whether a document,
record, or other information is relevant to a claim for benefits shall be determined
23 | by reference to paragraph (m)(8) of this section.
24 | 29 CFR §2560.503-1(j)(3). Paragraph (m)(8) states:
25 | A document, record, or other information shall be considered
26 |
27 | PLAINTIFF'S INITIAL ARBITRATION BRIEF -26
28 |

**KRAFCHICK LAW FIRM**
100 W. Harrison
SouthTower, Suite 300
Seattle, Washington 98119
(206) 374-7370  Fax (206) 374-7377
klf@krafchick.com

1    relevant to a claimant's claim if such document, record or other
2    information:

3        i.              was relied upon in making the benefit determination;

4        ii.             was submitted, considered, or generated in the course of making
5                        the benefit determination without regard to whether such
                         document, record, or other information was relied upon in making
6                        the benefit determination;

7        iii.            demonstrates compliance with required administrative processes
8                        or safeguards;

9        iv.             in the case of a ...plan providing disability benefits, constitutes a
10                       statement of policy or guidance with respect to the plan
                         concerning the denied benefit for our client's diagnosis, whether
11                       or not it was relied on in making the benefit determination.

12   29 CFR §2560.503-1(m)(8).  Liberty gave no such notice in its handling of the short term
13   disability claim (although they did ambiguously offer "pertinent documents" made most
14   concurrently (November 29, 2001) with the date of disability August 28, 2001. **(CF001097-**
15   **98; CF000960-61; and CF000769).** However Liberty considered the short term disability
16
17   denial in their denial of the long term disability claim.  **(CF000769).**  In fact much of their
18   focus rests on the 90 days from August 29, 2001 - November 26, 2001.  **(*See November 17,***
19   ***2003 Initial Denial of LTD claim at* CF000769).**  Therefore the procedural failings in notice
20
21   in the short term disability claim, affected the record and also the review and contributed to
22   the adverse benefit decisions made in the later evaluation of the long term disability claim.
23        Furthermore, as this year the *Saffon Court* so aptly put, ERISA requires a meaningful
24
25   dialogue between ERISA fiduciaries and a claimant in a manner a claimant can understand.
26
27
28   PLAINTIFF'S INITIAL ARBITRATION BRIEF -27

**KRAFCHICK LAW FIRM**
100 W. Harrison
SouthTower, Suite 300
Seattle, Washington 98119
(206) 374-7370   Fax (206) 374-7377
klf@krafchick.com

1  *Saffon , 2008 U.S. App. LEXIS 334; Booton, 110 F.3d 1461, 1463 (9th Cir. 1997).* The

2  regulations required Liberty in their letter to provide "a description of any additional material

3  or information necessary for the claimant to perfect the claim and an explanation of why such

4  material or information is necessary. 29 CFR §2560.503-1(g)(1)(iii). This should not be a

5  passive "send us whatever you want" type of notice. It should contain the substance of missing

6  information or inadequate information that Plaintiff could remedy in their appeal.  As the

7  *Saffon* court put it:

8

9  > Ten years ago in *Booton v. Lockheed Medical Benefit Plan, 110 F.3d 1461, 1463 (9ᵗʰ Cir. 1997),* we interpreted the ERISA regulations as calling for a "meaningful

10  > dialogue" between claims administrator and beneficiary. In resolving Saffon's claim

11  > for benefits MetLife was required to give her "[a] description of any additional

12  > material or information " that was "necessary" for her to "perfect the claim," and to

13  > do so"in a manner calculated to be understood by the claimant." 29 C.F.R. § 2560.503-1(g).

14

15  *Saffon at 14-15.*  The short term disability initial adverse benefit decision did not do this in

16  a manner Ms. Carr could understand.  **(CF001094).**

17      **C.**        **LIBERTY FAILED TO PROVIDE FULL AND FAIR REVIEW**

18                    **REQUIRED BY ERISA BECAUSE OF PROCEDURAL**
                      **VIOLATIONS AND INFECTION WITH BIAS**

19

20              **1.      LIBERTY FAILED TO ADEQUATELY INVESTIGATE**

21                      **THE CLAIM PROVIDING EVIDENCE OF BIAS.**

22

23      *Abatie*, citing *Booton,* recognizes as a minimum requirement that Liberty had a duty to

24  plaintiff Carr to investigate her claim and ask her for necessary evidence. *Abatie at* . Failure

25  to investigate or ask for necessary evidence weighs heavily against Liberty.

26

27  PLAINTIFF'S INITIAL ARBITRATION BRIEF -28

28

KRAFCHICK LAW FIRM
100 W. Harrison
SouthTower, Suite 300
Seattle, Washington 98119
(206) 374-7370   Fax (206) 374-7377
klf@krafchick.com

1    In this case, the short term disability claims managers did very little other than collect

2    medical records, have them reviewed by two doctors, and deny the claim.  At the initial

3    evaluation they did even less accepting the Attending Physicians Statement which said Ms.

4    Carr could performing heavy work, and ignoring the multiple diagnoses she carried.  They

5    
6    accepted that check mark in a box without question in the face of facts raising questions.

7    As part of their very limited investigation of this claim, Liberty does call Ms. Carr

8    January 22, 2002,, for what they call an initial interview, the very day they plan to deny her

9    
10   claim. (CF001095).  They confirm that no doctor told her to stop working.  They ask for her

11   symptoms impairing her ability to work.  When she is asked what keeps her from working,

12   the claim note reflects she told Liberty: "EE states that she suffers from excessive

13   
14   fatigue...nausea,,,pain in muscles/joints or arm-leg-hands...high blood pressure...gastric

15   reflux." **(CF001095)**.  She had previously said she could not go into work on August 29,

16   2001 because she "was just too sick to go into work." **(CF001080)**.

17   This report stands in stark contrast with the Lamb APS.  How could anyone be cleared

18   for "heavy work" with those stated problems?  Apropos of Dr. Lamb, Ms. Carr is reported to

19   
20   have told Liberty: "EE states that Dr. Lamb may not have been aware of how bad she was

21   feeling during that time." (CF001080).  It is at the end of this phone discussion, Liberty tells

22   Ms. Carr: "I informed EE that based on her statement that no physician ever advised her to

23   cease work and the APS from Dr. Lamb - that I have no alternative but to deny her claim."

24   
25   **(CF001080)**.

26   
27   
28   PLAINTIFF'S INITIAL ARBITRATION BRIEF -29

KRAFCHICK LAW FIRM
100 W. Harrison
SouthTower, Suite 300
Seattle, Washington 98119
(206) 374-7370   Fax (206) 374-7377
klf@krafchick.com

1    As stated earlier, alternatives did exist. Because of the disconnect between the reported
2  symptoms Ms. Carr described and the doctor's assessment of function, she could have
3  referred the case to medical to talk with the doctor to make sure a mistake had not been made.
4
5  Liberty could have asked Ms. Carr to provide from Dr. Lamb an explanation of her
6  assessment of capable of heavy work compared to Ms. Carr's symptoms. Instead they, stood
7  pat, and told Ms. Carr they are denying the claim and that she could appeal if she disagreed.
8  Not surprisingly, Ms. Carr told Liberty she did disagree. **(CF001080).**
9
10    In evaluation of the long term disability claim, Liberty really did not do much more.
11  They requested records, they had the records reviewed by a favored insurance claim reviewing
12  doctor, they discounted favorable information and they denied the claim.
13
14          **2.      LIBERTY VIOLATED ERISA REGULATIONS IN THE
15                  LETTER PROVIDING THE INITIAL ADVERSE
                  BENEFIT DECISION WHICH FAILED TO MEET
16                  ERISA REQUIREMENTS. LIBERTY FAILED TO TELL
                  MS CARR IN A WAY SHE COULD UNDERSTAND,
17                  THE TYPE OF INFORMATION SHE NEEDED TO
                  SUBMIT TO PERFECT HER CLAIM –EVIDENCE OF
18                  A PROCEDURAL VIOLATION**
19
20    Liberty sent a letter denying the short term disability claim dated January 22, 2002 to Ms.
21  Carr. The letter confirms the decision to deny the claim they had told her by phone. The
22  letter states they "requested medical information from your physician(s ) and then compared
23  your restrictions and limitations to the requirements of your job with your current employer.
24
25  **(CF001097).**   In fact, all they did was send an attending physicians statement to Dr. Lamb.
26
27                                          KRAFCHICK LAW FIRM
                                          100 W. Harrison
                                          SouthTower, Suite 300
28  PLAINTIFF'S INITIAL ARBITRATION BRIEF -30        Seattle, Washington 98119
                                          (206) 374-7370   Fax (206) 374-7377
                                          klf@krafchick.com

1  The letter indicates Ms. Carr submitted a claim for Gastric Reflux Disorder, Hypertension,

2  Fibromyalgia, and Anxiety.  Again this does not meet the requirements of *Saffon* for a

3  meaningful dialogue. Liberty takes an extremely passive approach.  Why did they not send

4  APS to all the doctors?  Why did they not get medical records from all the doctors?

5

6          3.      **THE FAILURES OF THE SHORT TERM DISABILITY**
                 **CLAIM WERE ADOPTED IN THE EVALUATION OF**
7                **THE LONG TERM DISABILITY CLAIM – EVIDENCE**
                 **OF BIAS AND PROCEDURAL VIOLATIONS**
8

9

10      The initial adverse benefit decision in the long term disability claim November 17, 2003,

11  recounts the history of the short term disability claim as a foundation for the denial of the long

12  term disability claim:

13
          Our comprehensive review of Ms. Carr's claim reveals the following
14        information–on November 29, 2001 Ms. Carr telephoned in a claim to Liberty Life
          Assurance Company of Boston ("Liberty") for Short Term Disability benefits for
15        Carpal Tunnel Syndrome right wrist, Autoimmune Rheumatoid Disorder and High
          Blood Pressure.  She indicated that her disability was work related.  A timely and
16        thorough review of Ms. Carr's claim commenced.  Telephone attempts to gather
          medical information from Dr. Lamb, who Ms. Carr stated was her treating
17        physician, were unsuccessful and on December 3, 2001 a request was faxed to Dr.
          Lam for medical records and completion of an Attending Physicians Statement. A
18        letter was also sent ot Ms. Carr to advise the request had been made and the
          information was required by January 2, 2002 or we would make a claim
19        determination based on the information in the file.
20
          On December 11, 2001, we received a letter from Ms. Carr stating she had contacted
21        Dr. Lamb's office to advise that the medical information required by Liberty was
          time sensitive.  Ms. Carr also asked in the letter if there was anything further she
22        could o to facilitate the claim or if any additional paperwork needed completion.
          Ms. Carr also inquired if medical report was were received from Dr. Dixit or Dr.
23        Wong.  Liberty called Ms. Carr immediately to advise no information had been
          received to date from Dr. Lamb and that requests had not been sent to Dr. Dixit or
24
25
26
27                                                      **KRAFCHICK LAW FIRM**
                                                        100 W. Harrison
                                                        SouthTower, Suite 300
28  PLAINTIFF'S INITIAL ARBITRATION BRIEF -31          Seattle, Washington 98119
                                                        (206) 374-7370   Fax (206) 374-7377
                                                        klf@krafchick.com

Dr. Wong, as she had previously stated Dr. Lamb was her treating physician and it was Dr. Lamb who reportedly had taken her out of work.

Liberty telephoned Ms. Carr on January 2, 2002, and left a voice mail message that the medical from Dr., Lamb had never been received. Ms. Carr called to request our fax number, which was provided. Dr. Lamb's office then called asking for a 24 hour extension on getting the medical faxed to our office. This request for additional time was granted. On January 3, 2002, the information including the Attending Physicians Statement, was received and the file forwarded to a case manager for review.

An interview was attempted by the case manager with Ms. Carr on January 21, 2003, however, we were unable to reach Ms. Carr, and a voice mail message was left for her to return the call. Ms. Carr did call back on January 22, 2003 and when asked if any of her physicians told her to cease work, she stated no. She indicated that Dr. Wong tried to convince her to resign from her job and look for other work. Ms. Carr was advised that Dr. Lamb's completed Attending Physicians Statement was received via fax on January 3, 2002. On the form Dr. Lamb indicated Ms. Carr had a class 2 physical restriction – no limitation in functional capacity; capable of heavy work and was not advised to cease work. Ms Carr was then advised that her claim would be denied as the medical documentation submitted in support of her claim did not establish disability as defined in the policy Ms. Carr was advised that a letter would be forthcoming including her ERISA right to appeal if she disagreed. Ms. Carr stated she did disagree.

(CF000769). This letter provides a very filtered description of what really went on in the short term disability claim. There is no record of receiving anything from Dr. Lamb other than the APS. Furthermore, as the Short Term Disability claim is evaluated on appeal, this is when the medical records are collected for the first time. (CF001079. CF001089; CF001095; CF001080).

Somewhat concerning also is the fact that Ms. Carr told Liberty she did not really know what she was supposed to submit in her 3/15/2002 appeal of the short term disability denial, and asked that Liberty talk to Dr. Dixit   The letter continues:

PLAINTIFF'S INITIAL ARBITRATION BRIEF -32

KRAFCHICK LAW FIRM
100 W. Harrison
SouthTower, Suite 300
Seattle, Washington 98119
(206) 374-7370  Fax (206) 374-7377
klf@krafchick.com

1    On March 19, 2002, a letter of appeal was received from Ms. Carr. However no
2    medical information was contained therein. Ms. Carr did sate that she wanted
     Liberty to contact Dr. Dixit for information about her reported disabling condition.
3    On March 22, 2002 Liberty sent medical requests to Dr. Lamb, Dr. Dixit and Dr.
4    Wong, all of the providers Ms. Carr had treated with, and the file was forwarded to
     the Appeal Review Unit.
5
     Medical records from the three providers were received by April 18, 2002 and a
6    review was conducted. On May 8, 2002, the appeal review was completed and the
7    determination to maintain the denial was made as Ms. Carr did not meet the
     definition of disability.
8
9    **(CF000769.)** Liberty and their claims analyst Mary Ellen Smith proceeded to evaluate and

10   decide the appeal without letting Ms. Carr know of the shortcomings of her support in their

11   eyes. They made no attempt to contact and talk to her physicians. They refused to credit the

12   opinions of the doctors provided for the claim in favor of the initial records and the Lamb

13   APS.

14

15   **3.        LIBERTY FAILED TO CONTACT DR DIXIT, DESPITE A
               REQUEST FROM MS. CARR THAT THEY DO SO, GIVEN
16             HER CONFUSION OVER WHAT SHE NEEDED TO PROVIDE
               LIBERTY TO OVERCOME THEIR DENIAL–EVIDENCE OF
17             BIAS AND PROCEDURAL VIOLATIONS AFFECTING THE
               CLAIM..**
18

19   In her March 15, 2002 appeal letter Ms. Carr told Liberty: "Since I am not confident

20   about what Liberty needs to review, but I do want a review, please contact Dr. Dixit for data

21   or information about my disabling condition." **(CF001094).** This statement provides strong

22
     evidence of a violation of 29 CFR 2560.503-1(g)(3). The fact that Liberty did nothing more
23
     than obtain medical records they had not obtained during the initial evaluation and rest their
24

25   laurels on the questionable attending physicians statement by Dr. Lamb does not meet the

26
                                          KRAFCHICK LAW FIRM
27                                        100 W. Harrison
                                          SouthTower, Suite 300
28   PLAINTIFF'S INITIAL ARBITRATION BRIEF -33   Seattle, Washington 98119
                                          (206) 374-7370   Fax (206) 374-7377
                                          klf@krafchick.com

1   requirement reinforced in *Saffon* of the need to engage in a meaningful dialogue in a manner

2   calculated to be understood by a claimant. *Saffon, 511 F. 3d 1206 (9th Cir. 2008).*

3

4

5       **4.**       **SHOWING THEIR BIAS BASED ON THEIR CONFLICT, LIBERTY FAILED TO GIVE ANY CREDIT TO CLAIMANT'S SUPPORTING MATERIAL RELYING INSTEAD ON A QUESTIONABLE ATTENDING PHYSICIAN STATEMENT LATER CONTRADICTED, AND THREE RECORD REVIEWS BY BIASED INSURANCE COMPANY DOCTORS**

6

7

8

9

10         **a.**      **Liberty never considered the requirement of three months of widespread pain to enable Dr. Dixit to diagnose fibromyalgia October 24, 2001**

11

12      Relying on Dr. Lamb's Attending Physicians Statement, particularly the check in the box

13   for no functional disability, Liberty ignores the multiple diagnoses they knew Ms. Carr had.

14   With respect to the fibromyalgia diagnosis, which they do not question, they do not consider

15

16   that in order to have a valid diagnosis as of October 24, 2001, Ms Carr had to provide a

17   history of widespread pain for at least three months prior to that date. **(CF000687;** *see*

18   **LL01196).** Since no one at Liberty questioned the diagnosis, one can only infer that Dr. Dixit

19

20   knew the basic ACR criteria and made his diagnosis based on a history of widespread pain

21   dating back to July 2001. Furthermore, Liberty's own claim manual recognizes that to

22   diagnose fibromyalgia you will need to obtain a history of at least three months of fatigue,

23   headache, sleep disturbance, or paresthesias. **(LL01196; LL02021).** If you compare the

24

25   definition used to educate claims handlers in LL01196 with the actual criteria for

26

27

28   PLAINTIFF'S INITIAL ARBITRATION BRIEF -34

KRAFCHICK LAW FIRM
100 W. Harrison
SouthTower, Suite 300
Seattle, Washington 98119
(206) 374-7370   Fax (206) 374-7377
klf@krafchick.com

1   fibromyalgia, (CF000687) you will note that they neglect to mention one of the key

2   criteria—three months of widespread pain, with pain above the waist, below the waist, on the

3   left side of the body, and on the right side of the body, with axial pain (pain in the spine). The

4   LL2021 description provides a little improvement, but it is training material from John Hewitt

5   & Associates. It wrongly appends to the accepted diagnostic criteria requirements of fatigue,

6   sleep disturbance, headaches and paresthesias whereas the actual criteria only require tender

7   points and widespread pain. (*Compare* LL2021 with CF000687).

8

9                              **b.      Liberty never considered the Lamb and Dixit**
10                                       **Impairment Questionnaires, providing any reason**
                                         **why they should not accept the opinions and**
11                                       **observations they contain.**

12         The record in this case provides absolutely no meaningful explanation as to why Liberty

13

14   did not give any credibility to the Impairment Questionnaires filled out by Dr. Lamb and Dr.

15   Dixit. (**CF000211-204 Lamb; CF000231-236 Dixit**).   They also have not explained why

16

17   they give no credibility to the letters provided by Dr. Lamb and Dr. Dixit. (**CF000460-461-**

18   **Dixit; Plaintiff's Submissions Notebook 4 Tab2**). Similarly, the record is without

19   explanation as to why the finding by Social Security is not significant supporting evidence.

20   (**CF000304-308**).

21

22         These impairment questionnaires date disabling symptoms back to July and August 2001.

23   Both doctors write that the symptoms included pain, fatigue and cognitive problems. They

24   clearly state that the doctors believe Ms. Carr to be unable to work in her own or any

25   occupation. The questions in these questionnaires are far more searching on the issue of

26

27                                                 KRAFCHICK LAW FIRM
                                                   100 W. Harrison
                                                   SouthTower, Suite 300
28   PLAINTIFF'S INITIAL ARBITRATION BRIEF -35     Seattle, Washington 98119
                                                   (206) 374-7370   Fax (206) 374-7377
                                                   klf@krafchick.com

functional disability than anything in the Liberty APS. **(CF000211-204 Lamb; CF000231-236 Dixit)**

Instead Liberty focused on the records concurrent with the date of disability rather than looking at later provided information that responded to their stated concerns that there was no evidence of impaired function during the elimination period. This has been their constant refrain throughout the denials of both the short term and long term disability claims.

      c.   **Liberty dismissed the Social Security award providing a date of disability of 8/27/01, without providing any good reason, other than we do not have to follow it.**

While Plaintiff agrees that the award of Social Security Disability benefits with a date of disability of August 27, 2001 is not determinative of the Liberty claim, it does provide strong evidence that Ms. Carr could not engage in her own occupation for the first 24 months of coverage, and then the inability to work in any occupation after that. This is another piece of supporting evidence which adds to the weight of support for Ms. Carr's claim that Liberty casually dismisses. Liberty provides absolutely no reason for totally dismissing the SSD grant of benefits. Liberty's quick dismissal of this evidence again demonstrates their bias. Certainly if the claim is granted they will seek an offset for SSD benefits paid during any period for which Liberty pays benefits. (*See* **Group Disability Income Policy, Section 4, Benefits from Other Income, Form DOP-LTD-0012.05; DOP3-LTD-0014).**

PLAINTIFF'S INITIAL ARBITRATION BRIEF -36

**KRAFCHICK LAW FIRM**
100 W. Harrison
SouthTower, Suite 300
Seattle, Washington 98119
(206) 374-7370   Fax (206) 374-7377
klf@krafchick.com

    d.    **Liberty never sought an IME, asked very narrow questions of their record reviewers, and selected biased record reviewers**

In this case, Liberty selected three very biased record reviewers, favorites of the insurance industry: John Holbrook, MD; Gale Brown, Jr. MD, and Amy Hopkins, MD.  None of these physicians examined Ms. Carr.  They were only provided information that Liberty gave them. As described below, they viewed the evidence with a filter leaving out meaningful consideration of favorable evidence, and highlighting evidence supporting denial of the claim.

Interestingly, in *Saffon,* the Court faulted MetLife for they way they communicated their record review findings to the treating physicians.  In this case, with the unsupportive attending physicians statement by Dr. Lamb, Liberty made no effort to contact Ms. Carr's physicians. Even when confronted with contrary evidence in their evaluation of Ms. Carr's long term disability claim, they did not choose to send their record reviews to the treating physicians or do anything else with the treating physicians besides obtaining and reviewing their medical records.

In *Saffon,* the 9th Circuit Court observed:

> MetLife referred Saffon's appeal to Dr. Robert A. Menotti, who, like Dr. Thomas, neither examined nor interviewed her. After reading MetLife's file, Dr. Menotti concluded that "[t]here simply is not enough objective medical findings and office notes that have continued to flow into this file, that convince this reviewer that the claimant's self-reported headache and chronic pain syndrome has been enough to preclude her from" working.

*Saffon* at 13.  This is similar to what each of the three record reviewers found in evaluating

PLAINTIFF'S INITIAL ARBITRATION BRIEF -37

KRAFCHICK LAW FIRM
100 W. Harrison
SouthTower, Suite 300
Seattle, Washington 98119
(206) 374-7370   Fax (206) 374-7377
klf@krafchick.com

1   Ms. Carr's claim. Dr. Holbrook concluded on October 20, 2003: "(1) The preponderance of

2   clinical evidence in the medical file supports conclusion that the claimant did have functional

3   capacity for full-time sedentary work on August 29, 2001. (2) There have been multiple

4   physical exams other than Dr. Dixit since 8/29/01. One would expect that if the claimant

5   were substantially impaired on 8/29/01, that others would have noticed exam findings

6   consistent with this impairment.." **(CF000786)**. Dr. Gale Brown, on November 19, 2003

7

8   concluded: "Based on the reviewed medical documentation, to a reasonable degree of medical

9   certainty, it is this reviewer's opinion that Ms. Carr did not have any medical impairments as

10  of 8/29/01 supporting physical restrictions or her inability to perform the essential duties of

11

12  her own sedentary occupation full time. On the contrary, the documentation supports non

13  medical factors related to work as the primary issue precipitating work stoppage, rather then

14

15  any specific medical condition." **(CF000775)**. Interestingly, right after making this

16  conclusion, Dr. Gale Brown notes the following diagnoses: (1) GERD/hiatal hernia;

17  (2)Sjogren's syndrome; (3) Fibromyalgia; (4) Menopause; (5) Hypertension; (6) Anxiety; (7)

18  Depression; (8) Degenerative cervical and lumbar spine disease; (8) Hypercholesterolemia;

19  (9) Osteopenia; (11) History of H. pylori infections (treated), genital HSV (treated p.r.n.),

20

21  childhood jaundice, seasonal rhinitis, tonsillectomy; (12) Rosacea; (13) Mitral valve prolapse.

22  **(CF000775)**. He does not explore what symptoms these diagnoses probably account for. He

23  adds in his "Medical Analysis" the following statement: "The reviewed medical

24

25  documentation does not support physical impairment or specific physical restrictions as of

26

27

28  PLAINTIFF'S INITIAL ARBITRATION BRIEF -38

**KRAFCHICK LAW FIRM**
100 W. Harrison
SouthTower, Suite 300
Seattle, Washington 98119
(206) 374-7370   Fax (206) 374-7377
klf@krafchick.com

1    8/29/2001." **(CF000776).** Then Dr. Gale Brown, as can be expected by the popularity of Dr.

2    Gale Brown with disability insurers, picks through the records to support his claim.  A good

3    example of the filter he used is in his first paragraph espousing "careful review."  Dr. Brown

4    quotes the 8/28/2001 note by Dr. Lamb, mentioning exercise and sleeping well, but leaving

5    out the part of the record that stated "sometimes feels extraordinarily tired especially after

6    exercise."  **(CF000776).**  He also does not comment on the 160/108 blood pressure recorded

7    at that visit or the specific complaints or pain or the decision to refer Ms. Carr to a

8    rheumatologist to "rule out a rheumatological disorder with palpable tender lesions, positive

9    ANA, and fatigue."**(CF000171)** He discounts the diagnosis by Dr. Dixit and he focuses on

10   Ms. Carr's ability to exercise.  He also picks at the lack of documentation correlating

11

12   symptoms or physical exam findings although he recognizes "there is documentation of

13   degenerative spinal disease by Xray." **(CF000776)** He does note Ms. Carr's problems with

14   hypertension, but dismisses it as controlled by medication, and notes the lack of any

15   recommendation to curtail her activity due to this condition. **(CF000776-777).**  He then

16   concludes: "In the absence of verifiable physical impairment I find no basis to impose any

17   physical restrictions or limitation, including the period 8/29/01 forward." **(CF000777).**  He

18   dismisses Dr. Dixit: "The physical restrictions recommended 5/320/03 by Dr. Dixit do not

19   correlate with any specific physical pathology, or any objective functional data."

20   **(CF000777).**   In his review or records, Dr. Brown notes he reviewed the fibromyalgia

21   impairment questionnaire completed by Dr. Dixit 5/30/03 stating Ms. Carr was totally and

22

23

24

25

26

27

28   PLAINTIFF'S INITIAL ARBITRATION BRIEF -39

**KRAFCHICK LAW FIRM**
100 W. Harrison
SouthTower, Suite 300
Seattle, Washington 98119
(206) 374-7370  Fax (206) 374-7377
klf@krafchick.com

1   permanently disabled.   **(CF000781)**. However this questionnaire is a detailed look at

2   functional impairment finding the total and permanent work disability began in August 2001

3   and has been continuous.**(See FM Impairment Questionnaire at CF000231-236)**. Dr.

4

5   Brown provides no cogent reasons for dismissing the opinions offered in this document.  For

6   his Functional Summary, Dr. Gale Brown wrote:

7       At the time of alleged disability, Ms. Carr worked in a sedentary occupation, as
        defined by the DOT.  Ms. Carr apparently has admitted to case management that
8       none of her physicians recommended medical disability when she went out of work.
        This concurs with the APS completed by Dr. Lamb 12/01, noting no physical
9       limitations/restrictions for diagnoses of GERD, hypertension, fibromyalgia, and
        anxiety."
10

11      On activities questionnaire 9/29/2003, Ms. Carr reports inability to do computer
12      work, and most self care/house work without assistance.  She states she can sit no
        more than 2 hours, and stand/walk zero to 1 hour in an 8 hour day.
13

14      Ms. Carr applied for, and received, Social Security Disability.

15  **(CF000782)**.  Dr.,Brown also fails to note that Social Security found Ms. Carr met their

16  definition of disability (tantamount to an inability to do any occupation) as of August 27,

17

18  2001. **(CF000304)**.  Dr. Brown makes no comment whatsoever on the Multiple Impairment

19  Questionnaire completed by Dr. Lamb 4/16/2003 and providing her more detailed findings

20  and opinions related to Ms. Carr's functional ability, finding that her symptoms and

21  limitations had affected Ms. Carr since July 2001. **(CF000204-211)**.

22

23      The Lamb Multiple Impairments Questionnaire of 4/16/2003 raises an important conflict

24  with her checked box in her initial Attending Physician Statement dated 11/12/01 and faxed

25  to Liberty 01/02/02. **(CF000178-179)**.  So does the Lamb letter we obtained dated 10/1/04,

26

27  KRAFCHICK LAW FIRM
100 W. Harrison
SouthTower, Suite 300
Seattle, Washington 98119
(206) 374-7370   Fax (206) 374-7377
klf@krafchick.com

28  PLAINTIFF'S INITIAL ARBITRATION BRIEF -40

1  discussed as missing in the claim file but referenced in our appeal letter. **(Notebook 4, Tab**

2  **2; )**

3

4                           **f.**       **Liberty failed to consider the types of symptoms**
                                   **common to these diagnoses to determine the effect**

5                                     **of the symptoms on Ms. Carr.**

6      Liberty's own training materials establish the requirement for consistent symptoms of

7  pain, fatigue, headache, sleeplessness for at least three months to establish the diagnosis of

8
9  fibromyalgia.  We do not have the Presley Reed duration guidelines for Fibromyalgia from

10  this case, but from another case we understand that 3 weeks is the stated duration.  As Claims

11  Analysts were referred to Presley Reed's website, this can demonstrate another element of

12  bias against fibromyalgia based claims, as peer reviewed studies establish that there is no cure

13  for fibromyalgia, and once people have it at a level that it interferes with work, it rarely

14
15  improves enough for them to return to work. [Wolfe Multicenter Study, Bengsston,

16  Henriksson)

17      However, when the training that analysts have tells them that symptoms of pain,

18  headaches, fatigue, etc must be present for at least three months, this should enable them to

19
20  question the Lamb APS.

21

22

23                           **g.**       **Liberty failed to consider the statements of Ms. Carr's**

24                                     **supporting lay witness statements as evidence**

25                                     **supporting her claim.**

26

27                                  **KRAFCHICK LAW FIRM**
                                100 W. Harrison

28  PLAINTIFF'S INITIAL ARBITRATION BRIEF -41        SouthTower, Suite 300
                                Seattle, Washington 98119
                                (206) 374-7370  Fax (206) 374-7377
                                klf@krafchick.com

1       In her appeal of the long term disability claim, Ms. Carr provided statements from several

2   people who knew her.  All support ongoing impairments that they have observed.  These were

3   the statements from Bill Lindley (mymrfixit.com) who has been a handyman helping Ms.

4   Carr(CF000458); Ellen Hancock, a friend for 50 years (CF000456-457); a 23 year friend Amy

5   Cherrnay (CF000455); and Elena Carr, Ms. Carr's daughter (CF000459).  In particular, Mr.

6   Lindley in 2004 observes that he has been helping Ms. Carr around her house for the last three

7   years and has observed her pain interfering with the simplest tasks and has observed her tears

8   because her pain is so severe during that time, that takes us back into 2001. (CF000458).

9   Ellen Hancock identifies the start of medical problems she observed in Ms. Carr in the Spring

10  2001: "Anita's health has been problematic.  She has not been able to drive much & has

11  complained of headaches; pain, dizziness, fatigue, heart palpitations, nausea, memory issues

12  & general malaise.  She has consistently complained to me about these symptoms and

13  continues to do so." (CF000456).  Ms. Hancock continues: "Sometimes when I call her in the

14  middle of the day, I am waking her up from a long nap.  When I saw her on July 29, 2004 and

15  we went for a very short walk of several blocks, she became fatigued and her legs hurt.  That

16  same day when we ate lunch, she arose form her dining chair in pain and moved very slowly.

17  ON August 29th we even went shopping and when we went into the first store, Anita wanted

18  to find a place to sit and have tea in their small café, saying she was already tired."

19  **CF000457).**

20

21      Liberty's review does not evaluate any of these statements that support Ms. Carr's initial

KRAFCHICK LAW FIRM
100 W. Harrison
SouthTower, Suite 300
Seattle, Washington 98119
(206) 374-7370  Fax (206) 374-7377
klf@krafchick.com

PLAINTIFF'S INITIAL ARBITRATION BRIEF -42

1  disability and ongoing disability.

2

3       h.    **Liberty failed to give any credit to Ms. Carr's own**
4             **statements, but give no reason for not believing**
5             **them.**

6       Throughout the claim file, Ms. Carr has provided statements to Liberty about her medical

7  condition and disabling symptoms. The last statement, dated October 8, 2004, summarizes

8  much of what she has previously stated. **(CF000460-461)**. It describes her symptoms

9  beginning in January 2001, bad enough to consider taking medical leave. The symptoms she

10  described included severe headaches, severe neck pain, server arm and hand pain, numbness

11  and tingling in her hands, moderate back pain, moderate leg and knee pain, overwhelming

12  tiredness, weakness, mental confusion and forgetfulness. She had very dry eyes and was using

13  eye drops several times a day. She had to go home on many lunch hours just to sleep (she

14

15  lived very close to where she worked). She had no energy when she awakened in the

16  mornings. She forced herself to go to work.. She saw Dr. Lamb in the morning before going

17

18  to work on August 28, 2001, and Dr. Lamb told her of the abnormal ANA test, and the need

19  to see a rheumatologist because of that abnormal ANA, and painful lumps,. It took her well

20  over a month to get into see Dr. Dixit. **(CF000460-461)**.

21

22       They symptoms she experienced stayed the same between August 28, 2001 and October

23  24, 2001 when she saw Dr. Dixit. After she stopped work the symptoms did not change. She

24  would wake up in the morning and then feel so tired she would have to go back to bed.

25

26

27

28  PLAINTIFF'S INITIAL ARBITRATION BRIEF -43

**KRAFCHICK LAW FIRM**
100 W. Harrison
SouthTower, Suite 300
Seattle, Washington 98119
(206) 374-7370   Fax (206) 374-7377
klf@krafchick.com

1  (CF000461).

2      Ms. Carr indicates that she described her symptoms to Dr. Dixit and he told her that she

3  had both Fibromyalgia and Sjogrens.  **(CF000461).**

4

5      At the time she wrote this letter in 2004 she found her activities limited due to

6  unpredictable pain, fatigue and cognitive problems.  She notes variation in the symptoms,

7  with some days so bad she cannot get out of bed.  She notes that her symptoms tend to

8  increase as her activity increases.  She describes that the medical conditions and their

9  symptoms limit her ability to shop, including grocery shopping. **(CF000461).**

10

11      In addition to this letter we submitted in Ms. Carr's final appeal, there are numerous other

12  statements she has made consistent with this description during the pendency of both her short

13  and long term disability claims. **(CF000180; CF001094; CF001079; CF001080; CF001090;**

14  **CF001095;** *see also* **PROV00045 ).**

15

16      Liberty does reference any report of disabling symptoms by Ms. Carr in any of their

17  denial letters in handling both the short and long term disability claims.**(***See* **CF001097-1098;**

18  **CF000960-961; CF000768-773; CF000021-28).**  They therefore missed the fact that the

19  symptoms Ms. Carr complained of are symptoms expected from the diagnoses of

20

21  Fibromyalgia and Sjogrens that they agree she has.  Liberty turned a blind eye to this

22  supporting evidence.

23

24

25

26

27  PLAINTIFF'S INITIAL ARBITRATION BRIEF -44

28

**KRAFCHICK LAW FIRM**
100 W. Harrison
SouthTower, Suite 300
Seattle, Washington 98119
(206) 374-7370  Fax (206) 374-7377
klf@krafchick.com

1

2

      **i.  Liberty totally failed to consider at all the fibromyalgia literature submitted on appeal that supports disability of Ms. Carr due to fibromyalgia.**

3

4    As part of our appeal we submitted a summary of relevant fibromyalgia literature and

5

6 attached that literature for Liberty's review (**CF000497-503 –Krafchick Law Firm

**Summary letter; CF000504-692**). The summary has been provided with the excerpts we are

7

8 submitting with this brief.  The actual articles referenced in the summary are not being

9 provided as part of the excerpts, but can be viewed in the copy of the claim file that we have

10 submitted. (**Notebooks 1 and 2 with all CF claim file pages**).  In particular look at the

11

12 following articles about fibromyalgia: Wolfe Multicenter Study ( **CF000714-722**); Robert

13 Bennett Article (**CF000723-730**); Bengtsson Paper (**CF000735-748**);Burkhardt and Bennett

14 Paper (**CF000479-53**); Waylonis Paper (**CF000731-734**); Henriksson Paper (**CF000754-759**).

15   ).

16

17

18      **j.  Liberty failed to consider, or show their reviewing doctor, the three days of surveillance they did December 29-31, 2004 that showed no meaningful activity.**

19

20

21

22    As often occurs in Fibromyalgia claims, in the handling of the long term disability

23 claim, Liberty had surveillance of Ms. Carr done. (**CF000063-70**).  The surveillance record

24 says they performed it over three days December 29-31, 2003.   The medical condition is

25 noted as GERD (gastroesophogeal reflux).In this case, the surveillance finds nothing

26

27                   **KRAFCHICK LAW FIRM**
100 W. Harrison
SouthTower, Suite 300
Seattle, Washington 98119
(206) 374-7370  Fax (206) 374-7377
klf@krafchick.com

28 PLAINTIFF'S INITIAL ARBITRATION BRIEF -45

1   inconsistent with her statements or doctors statements, so it is never referenced in any of the

2   denial letter. No doubt that is why it is never referenced in any of the denial letters. However

3   it does corroborate Ms. Carr's testimony about her then current level of function, and it lends

4
    credence to the doctor opinions regarding the degree of Ms. Carr's ongoing and original
5
6   impairment.

7                       **k.      Liberty fails to address the evaluations by
                                  Plaintiff's expert evaluators particularly in light of
8                                 other supporting information**

9
            In the appeal we handled we submitted reports from Dr. Robert Bennett
10
11  (rheumatologist)**(CF000249-303–report and CV);**  Dr. Jay Uomoto (neuropsychologist)

12  **CF000351-381–report and resume);** Theodore Becker RPT PhD (physical capacity

13
    evaluator)**(CF000309-350);** and Donald Uslan MA, MBA (vocational and rehabilitation
14
15  counselor)**(CF000382-454–report and resume).**  The evaluations by Dr. Becker and Dr.

16  Uomoto provide objective evidence of physical and cognitive disability. Mr. Uslan finds that

17  Ms. Carr is not suitable for any employment.   Dr. Bennett gives a thorough overview of

18  fibromyalgia and Ms. Carr's history and why he thinks she cannot work.  In his history it is

19
    very clear that the symptoms began in the summer of 2001, and he notes the date of disability
20
21  accepted by SSD as August 27, 2001. All of these experts identify problems that the evidence

22  from Dr. Dixit and Dr. Lamb in their impairment questionnaire, and Ms. Carr in the

23  description of her symptoms from the time she stopped work and took severance.  While
24
25  many things were going on in her employment, Ms. Carr clearly had problems with pain and

26

27  PLAINTIFF'S INITIAL ARBITRATION BRIEF -46

28

**KRAFCHICK LAW FIRM**
100 W. Harrison
SouthTower, Suite 300
Seattle, Washington 98119
(206) 374-7370  Fax (206) 374-7377
klf@krafchick.com

1   fatigue as well as cognitive problems.  The testing done by these experts in 2004 simply

2   demonstrates the effects of the symptoms Ms. Carr had at the time she left Providian.  Like

3
    the medical literature that also undergirds Ms. Carr's claim, Liberty dismisses these
4
    evaluations as not having any relationship with the initial problems diagnosed as GERD,
5
6   Fibromyalgia, and Sjogrens.

7           Even more indicative of Liberty's approach and attitude to this claim, Liberty

8   notes that there is an October 1, 2004 letter from Dr. Lamb that "was not included with the
9
    appeal."  **(CF000024)**.  They never called to ask us to provide it.  They simply relied on
10
11  quotes in the appeal letter.  They note she says "In retrospect, I believe her condition was such

12  that it did not allow her to do full work duties." **(CF000024)**.

13          **5.          LIBERTY'S FINAL DENIAL SIMPLY RESTATES THE**
14                  **CONCLUSIONS   RAISED   PREVIOUSLY   AND**
                    **REHASHES  THE  SAME  FACTS  FOCUSING  ON**
15                  **HOPKINS    REVIEW    AND    THE    LACK    OF**
                    **CONCURRENT   MEDICAL,   IGNORING   THE**
16                  **SUPPORTING EVIDENCE.**

17

18          We have already discussed the foundation of the final denial of long term
19
    disability benefits grounded in the denial of the short term disability benefits, and we have
20
21  noted Liberty's failure to call us to get a copy of the missing Lamb letter we submitted with

22  our appeal.  Dr. Hopkins notes for the first time in any report, that Ms Carr went out of work

23  because she was laid off and not due to any disability.  She focuses on the Lamb APS from
24
25  1/2/02.  She agrees with diagnosis of Sjogrens on a clinical basis.  She questions, for the first

26

27

28  PLAINTIFF'S INITIAL ARBITRATION BRIEF -47

**KRAFCHICK LAW FIRM**
100 W. Harrison
SouthTower, Suite 300
Seattle, Washington 98119
(206) 374-7370  Fax (206) 374-7377
klf@krafchick.com

1   time the validity of Dr. Dixit's tender point evaluation because he did not document control

2   points.  Nothing in the medical literature calls for using control points for a diagnosis of

3   fibromyalgia.  She recognizes the symptoms of pain, fatigue, and tender points can be caused

4
5   by Sjogrens with depression, sleep disorder, and myofascial dysfunctions.  She also speculates

6   that since Ms. Carr said her symptoms were worse with work stress, they may be

7   psychological in origin. She refers to the 1979 Barsky article for that.  Interestingly she is not

8
9   asked to nor does she comment on any of the much more recent peer reviewed literature

10  provided in the claim file as part of Ms. Carr's appeal.  She recognizes the degenerative

11  changes found on xray in Ms. Carr's spine, but says no restrictions or limitations were

12  ascribed to these findings.  She appears to ignore back pain that is part of Ms. Carr's

13
14  constellation of complaints. She comments on the vocational evaluation of Ms. Carr's job as

15  a director. (*But see,* **CF000903 and CF000914).**  She dismisses the expert reports we

16  provided as two and a half years after the date of disability.  As the prior letters concluded,

17  Ms Winterer for Liberty summarizes her evaluation:

18          Thus we conclude based on review of all of the medical
19          documentation contained in Ms. Carr's disability file, there is
            insufficient medical evidence to establish that Ms. Carr's medical
20          condition was of a nature and severity that prevented her from
            performing the material and substantial duties of her Director
21          Database Technology occupation at the date of disability, August 28,
            2001 continuously through the Elimination Period. Therefore , Ms
22          Carr did not meet the definition of disability , as defined in the
            Providian Bancorp Services Group Disability Income Policy, and no
23          benefits are payable.
24
25          This claim determination reflects an evaluation of the claim facts
26

27                                                          **KRAFCHICK LAW FIRM**
                                                          100 W. Harrison
                                                          SouthTower, Suite 300
28  PLAINTIFF'S INITIAL ARBITRATION BRIEF -48            Seattle, Washington 98119
                                                          (206) 374-7370 .Fax (206) 374-7377
                                                          klf@krafchick.com

1   and policy provisions.

2   **(CF00028)**. This evaluation like all of the others dismisses all of the favorable evidence and

3   narrowly focuses on the date of disability and the next 90 days. Why did they not give any

4
5   weight to the Impairment Questionnaires by Dr. Dixit and Dr. Lamb or the letters from these

6   doctors? Why did they not look at the fibromyalgia literature and their information about

7   fibromyalgia and Sjogrens to recognize the error in Dr. Lamb's initial APS? Why did they

8
9   not accept her later opinions and corrections? Why did they not ask for the missing Dr. Lamb

10  report we had submitted with our appeal? Why did they do surveillance and then not mention

11  it? The most obvious answer to these questions is that they were determined to deny this

12  claim and deprived Ms. Carr of a full and fair review.

13

14
15       6.          **LIBERTY FAILED TO FOLLOW   THEIR OWN
              PROCEDURES IN HANDLING MS. CARR'S CLAIM
16            FOR WHAT THEY IDENTIFY AS A COMPLEX
              DISABILITY**
17

18
19       In the materials that Liberty produced as their claims manual in effect during

20  the pendency of this claim, Liberty specifically mentions fibromyalgia as a complex

21  disability, and sets out specific procedures their claims analysts should follow to manage

22
23  a complex disability claim. **(LL01196-98)**. Other than contacting the claimant, in the

24  short term disability claim, nothing was done because of Dr. Lamb's APS setting

25  functional capacity at able to do heavy work. In the initial evaluation of the short term

26

27                                    KRAFCHICK LAW FIRM
                                      100 W. Harrison
                                      SouthTower, Suite 300
28  PLAINTIFF'S INITIAL ARBITRATION BRIEF -49    Seattle, Washington 98119
                                      (206) 374-7370  Fax (206) 374-7377
                                      klf@krafchick.com

1   disability claim, they did nothing more initially than talking to Ms. Carr on the day they

2   determined to deny her claim, January 22, 2002. They do not get medical records. They

3   do not have their medical department do any review.   The letter denying the short term

4   disability claim does not talk to her further, but does reference medical records received.

5   No doubt they will say there is no reason they had to go further because of the contents

6

7   of the records and Lamb APS. We have discussed this above and will not repeat those

8   arguments again here.

9

10

11  **III.        CONCLUSION**

12

13          The evidence in this case taken in its entirety, supports Ms. Carr's claim for long

14  term disability benefits. Liberty did not engage in a meaningful dialogue with Ms. Carr. They

15  did not provide proper notice in the initial adverse benefit in her short term disability claim.

16

17  Liberty remains narrowly focused on its review of this claim, blind to any supporting

18  information that comes outside the 90 day elimination period. They did not provide the full

19

20

21

22

23

24

25

26

27  PLAINTIFF'S INITIAL ARBITRATION BRIEF -50

28

KRAFCHICK LAW FIRM
100 W. Harrison
SouthTower, Suite 300
Seattle, Washington 98119
(206) 374-7370  Fax (206) 374-7377
klf@krafchick.com

1   and fair review that ERISA requires.  The Arbitrator should grant Ms. Carr her benefits.

2

3

4

5        DATED this 4th day of March, 2008

6

7                                        KRAFCHICK LAW FIRM

8

9

10

11        By:    _____

12                Steven P. Krafchick
                  Krafchick Law Firm
13                Attorney for Plaintiff
                  100 W. Harrison
14                South Tower, Suite 300
                  Seattle, WA    98119
15                206-374-7370
                  (Fax) 206-374-7377
16                klf@krafchick.com

17

18

19

20

21

22

23

24

25

26
                                        **KRAFCHICK LAW FIRM**
27                                       100 W. Harrison
                                         SouthTower, Suite 300
28   PLAINTIFF'S INITIAL ARBITRATION BRIEF -51    Seattle, Washington 98119
                                         (206) 374-7370  Fax (206) 374-7377
                                         klf@krafchick.com